STATE of Missouri, Respondent,

v.

Dennis J. MEAD, Appellant.

No. WD 60915.

Missouri Court of Appeals,
Western District.

May 27, 2003.

Nancy A. McKerrow, Assistant State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joel A. Block, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, P.J., LOWENSTEIN and HARDWICK, JJ.

HAROLD L. LOWENSTEIN, Judge.

Dennis J. Mead was convicted of first-degree robbery, armed criminal action and kidnapping. He appeals from the trial court's denial of his motion for a new trial, alleging that the trial court committed plain error in admitting hearsay testimony in violation of the Confrontation Clause of the Sixth Amendment. The State contends, among other things, that plain error review has been waived for failure to object to the admission of the hearsay testimony.

## I. Facts

On July 25, 1999, David Tresler was sitting in his friend's car in a parking lot outside his place of work, listening to the radio and smoking. A Ford Tempo, with

three people inside, circled the lot, then stopped. Mead stepped out of the Tempo, approached Tresler, and asked for a ride. Tresler denied Mead's request. Mead then jumped into Tresler's car through an open window on the passenger side, put on a pair of gardening gloves, and pointed a handgun at Tresler.

Mead commanded Tresler to drive, which Tresler did. The Tempo followed. During the drive, Mead, training the gun on Tresler, filled a bag with the following items from the car—compact discs, tapes, phone accessories, a watch, and Tresler's wallet. Mead warned Tresler not to look at him. Five or ten minutes into the drive, Mead yanked the steering wheel to the side, causing the car to swerve into a ditch. Mead jumped out of the car, hopped into the Tempo, which drove off.

After flagging down a police officer, Tresler gave the officer a description of the robber. Five days after the encounter, Tresler gave a written statement describing the assailant as having tattoos on his arms, one of which was a gothic-style cross with stars clustered around it. At the police station, Tresler said that a photograph of another man looked like the robber, though he never identified that man as the robber.

During the investigation of an unrelated robbery, the police questioned Shon Alvis, who admitted to being the driver of the Tempo. Alvis identified Mead, the appellant, as the robber. Officers could not match the fingerprints on Tresler's car with those of Mead.

At his trial for first-degree robbery, armed criminal action and kidnapping, Tresler testified that the robber had tattoos on both his arms and his neck. While Mead had a tattoo of a cross on his forearm, there were no stars around it. Tresler selected Mead's photograph from a pretrial photo spread. Tresler identified

Mead as the robber on four different occasions, testifying that there was "[n]o doubt in my mind" that Mead was the robber and that the cross tattoo on appellant's arm matched that of the robber.

Police Detective West testified that the name of Shon Alvis had surfaced while he was investigating a robbery at a nearby restaurant in his jurisdiction. When interviewed, Alvis told the detective that he (Alvis) was the driver during the Tresler incident and that Mead was the gunman whom he transported to Tresler's car and then picked him up from the car in the ditch. The detective testified that he passed this information to the department in the city where the crime in question occurred. The next witness, Detective Vasquez from the department investigating this crime, testified when he received the information about Mead from West, he then included the photo of Mead in the array shown to the victim, who then immediately selected Mead's picture as that of the robber. All of the above evidence came in without Mead objecting to the testimony as being inadmissible hearsay.

When Mead attempted to call Alvis as a defense witness, Alvis refused to testify, invoking his Fifth Amendment right against self-incrimination. Mead moved the trial court to instruct the jury that Alvis had been called as a witness by the State but that Alvis refused to testify. The request was denied. After eight hours' deliberation, the jury returned guilty verdicts as to the charges of robbery in the first degree, armed criminal action, and kidnapping. (Mead's motion for new trial raised the issue of improper hearsay testimony influencing the jury's verdict.)

## II. Analysis

Mead's point relied on is unclear as to how the trial court erred, but seems to

focus on the net result leading from the testimony of the two detectives about Alvis, and by the court not forcing Alvis to forgo his Fifth Amendment rights. Mead asked for plain error review in allowing Detective West to testify as to the hearsay statements made by Alvis that Mead was indeed the robber and kidnapper. He then asserts that because Alvis was not required to testify, Mead was unable to challenge his accuser.

■ The underlying question raised by this case is whether an appellant's failure to object to the admission of hearsay evidence precludes plain error review under Rule 30.20. The State directs the court to several cases which it claims stand for the proposition that there is no relief available on direct appeal for failure to object to hearsay. The cases presented, *in dicta*, imply there is no plain error for failure to raise a hearsay objection. *State v. Basile*, 942 S.W.2d 342, 357 (Mo. banc 1997) merely states nothing more than that such evidence may be considered by the jury and is admitted if there is no objection; *State v. Walden*, 861 S.W.2d 182, 187 (Mo.App. 1993), stated "hearsay evidence is not plain error if no objection is made at trial to its admission[.]", but then went on in the same paragraph to show that no manifest injustice or miscarriage of justice resulted from allowing the jury to consider the testimony; *State v. Aikens*, 3 S.W.3d 792, 796 (Mo.App.1999), where the court's opinion stated the "general rule" that if timely objection is not made to hearsay, "their admission is not plain error," but went on to say that much of the hearsay evidence was only cumulative to properly admitted evidence; and *State v. Lewis*, 809 S.W.2d 878, 879 (Mo.App.1991), where the court by way of dicta said: "Furthermore, where no objection is made, the admission of hearsay evidence is not plain error."

Waiver of plain error review is a paradoxical notion, for plain error is often raised by a party who has failed to object in the court below, whereas waiver requires an intentional relinquishment of a known right. *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 386 (Mo. banc 1989). It is difficult to square an intentional relinquishment of a known right with inaction. *See State v. Wright*, 30 S.W.3d 906, 911 (Mo.App.2000) ("A statement that counsel has no objection, as opposed to a failure to object, waives plain error review because the response precludes a finding that the failure to object was negligent or inadvertent.") While our cases have spoken of a "waiver" by failing to object, it would appear the more accurate description of a failure to object, without explanation, might more appropriately be deemed a "forfeiture," and would clearly allow plain error review. *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

The Second Circuit Court of Appeals has explained why inadvertence or negligence is insufficient to waive plain error review. *U.S. v. Yu–Leung*, 51 F.3d 1116 (1995) (Calabresi, J.) (citing *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). It makes a distinction between waiver and forfeiture, noting that:

> Courts have not always verbally adhered to the distinction when speaking about a claim of plain error that arises from a party's failure to assert an evidentiary objection. Thus, they often refer to a party as having "waived" an objection when, in fact, they mean that the party has only forfeited the objection. But the substantive distinction remains both clear and crucial. If a party's failure to take an evidentiary exception is simply a matter of oversight, then such oversight qualifies as a correctable "forfeiture" for the purposes of plain error analysis. If

however, the party *consciously refrains from objecting as a tactical matter*, then that action constitutes a true "waiver," which will negate even plain error review.

*Id.* at 1121. (emphasis added) This distinction comports with general waiver principles and with Missouri precedent, in particular *State v. Altaffer*, 23 S.W.3d 891, 896 (Mo.App.2000) (inaction of counsel was possible trial strategy, and hence plain error review was unavailable).

■ This court has restricted waiver of plain error to cases in which counsel has affirmatively acted in a manner precluding a finding that the failure to object was a product of inadvertence or negligence. *See Wright*, 30 S.W.3d at 911 (citing *State v. Scott*, 858 S.W.2d 282, 285 (Mo.App. 1993)). When a party affirmatively states that it has no objection to evidence an opposing party is attempting to introduce, for instance, plain error review is unavailable. *State v. Zelinger*, 873 S.W.2d 656, 660 (Mo.App.1994). Where, on the other hand, as appears to be the case here, the party merely fails to object because of inadvertence or negligence, plain error review should be, and is, available. *Wright*, 30 S.W.3d at 911.

The most clear declaration that plain error review on direct appeal is not precluded in a failure to object to hearsay is contained in the recent case of *State v. Link*, 25 S.W.3d 136, 145 (Mo. banc 2000). In that case, an officer's hearsay testimony concerned alibis and elimination of other suspects. The Court said, "Link did not object on hearsay grounds at trial, and again, his claim is reviewable only under plain error/manifest injustice standard." Rule 30.20.[1] A similar analysis is contained in *State v. Copeland*, 95 S.W.3d 196, 2003 WL 187246 (Mo.App.) at 3–4, where the court said that appellate review was "waived" where the error was not preserved, an appellate court could, if properly shown by the defendant that the hearsay impacted his rights that a manifest injustice or miscarriage of justice would result if left uncorrected, exercise the court's discretion to review for plain error.

The State's argument that plain error review should be precluded since plain error review is seldom granted. This assertion is without merit.

■ To show plain error, an appellant must demonstrate that the trial court's error so substantially violated his rights that manifest injustice or a miscarriage of justice would result if the error were left uncorrected. *State v. Clayton*, 995 S.W.2d 468, 478 (Mo. banc 1999). If the error did not have a decisive effect on the jury's verdict, there has been no plain error. *State v. Stewart*, 997 S.W.2d 36, 41 (Mo. App.1999). Before conducting plain error review, a reviewing court must first determine whether the trial court's action would amount to manifest injustice, assuming the court's action was erroneous. *Bedwell v. Bedwell*, 51 S.W.3d 39, 43 (Mo.App.2001) (adopting the procedure recommended in *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995)). If not, then plain error review is inappropriate. *Id.*

■ Assuming, for the sake of argument, that the police officer's testimony here was inadmissible hearsay, no manifest injustice resulted, and hence plain error review is inappropriate. During the trial, the victim, David Tresler, identified Mead four separate times. Mead was adamant

---

1. A variation on this analysis exists where the hearsay testimony is inadmissible, unpreserved, and is "merely cumulative to other evidence properly admitted." *State v. Good-win*, 43 S.W.3d 805, 817 (Mo. banc 2001). In such case, there is no plain error review of the improperly admitted evidence. *Id.*

that Tresler was the one who stuck the gun in his face, ordered him to drive his car, and took property from the car Tesler was driving. He was able to recognize Mead by noting a distinguishing physical trait, a Gothic cross tattoo on one of Mead's arms. Mead's claim that Tresler's identification was shaky is untrue. Tresler said he was sure Mead was the robber, though he had earlier said that someone else "looked like" the robber. While the police officer's testimony corroborated Tresler's it was not indispensable. That the jury took eight hours to deliberate, upon which Mead places great significance, is irrelevant. This court declines Mead's request for plain error review. *See State v. Mabery*, 437 S.W.2d 91, 93 (Mo.1969) (refusing to apply plain error review where trial court's decision dealt with a discretionary matter and there was no showing of manifest injustice).

This court holds that a party does not waive plain error review unless the party's action or inaction (e.g., not objecting to supposed hearsay) clearly indicates that failure to raise an objection to an evidentiary decision was not a product of inadvertence or negligence, but rather an intentional decision i.e., arguably an aspect of trial strategy.[2] Consequently, the fact that Mead did not object to the introduction of inadmissible hearsay, if inadmissible or hearsay it be, does not necessarily preclude plain error review.

This court refuses to grant plain error review on the sole point presented, the admission of hearsay testimony into evidence. Under these facts the appellant has failed to show the admission of this evidence, in the face of extensive evidence of his guilt as represented by the out-of-court and in-court identifications of the

victim, did amount to a manifest injustice or a miscarriage of justice. The judgment is affirmed.

All concur.

---

2. It must be noted, however, that an appellate court may, in its discretion, refuse to exercise plain error review. Rule 30.20.