**STATE of Missouri, Respondent,**

v.

**Jason NORMAN, Appellant.**

No. WD 64073.

Missouri Court of Appeals,
Western District.

Aug. 16, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 1, 2005.

As Modified Nov. 1, 2005.

Application for Transfer Denied
Dec. 20, 2005.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lacey R. Searfoss, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

Kent Denzel, Asst. Public Defender, Columbia, MO, for Appellant.

Before HOWARD, P.J., and SMART and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

Jason Norman ("Norman") appeals from a conviction by jury in the Circuit Court of Lafayette County for trafficking in the first degree in violation of section 195.222,[1] and trafficking in the second degree in violation of section 195.223. Norman argues two points on appeal. In Point I, Norman argues the trial court erred by admitting Fred Alkire's testimony that Gary Cowan had mentioned Norman's name, because the testimony was not admissible under the co-conspirator exception to the hearsay rule. In Point II, Norman argues the trial court plainly erred in overruling Norman's objection to submitting both Count I and Count II to the jury and sentencing Norman on both counts, because Count II was a lesser-included offense of Count I, so submitting both counts to the jury constituted double jeopardy.

## Background

Norman was charged by an information in lieu of indictment, as a prior drug offender, in the Circuit Court of Lafayette County with: (1) trafficking of drugs in the first degree in violation of section 195.222 and (2) trafficking of drugs in the second degree in violation of section 195.223. Norman does not challenge the sufficiency of the evidence. Viewed in a light most favorable to the verdict, the following evidence was adduced at trial:

On December 13, 2002, around 12:20 p.m., Detective Heidi Morgan ("Morgan") of the Higginsville Police Department received a call to respond to the residence of Gary Cowan ("Cowan") and Christine Cowan following a report that Cowan and his friends were illegally riding their four-wheelers in the streets. Morgan immediately went to the Cowans' residence. When Morgan entered the porch area, she

---

1. All statutory references are to Revised Statutes of Missouri Cumulative Supplement 2004.

detected a chemical smell similar to ammonia coming from the residence and from around Cowan's truck. Morgan knocked on the Cowans' door, and Cowan answered the door, appearing to be extremely nervous. When Cowan opened the door, Morgan could smell and see marijuana smoke coming from the back of the residence. Cowan stepped outside and closed the door behind him, and Morgan advised Cowan to stop riding four-wheelers in the streets. Morgan did not tell Cowan she could smell marijuana and a chemical odor.

Morgan returned to the police station and notified Officer Fred Alkire ("Alkire") of the narcotics unit that she had smelled a chemical odor and marijuana at the Cowan residence. Alkire and Officer Donnie Hammond ("Hammond") responded to the Cowan residence around 3:00 p.m. Alkire detected a faint chemical odor on the front porch of the Cowan residence. Alkire and Hammond knocked on the front door, and Cowan answered the door. Alkire told Cowan he was there because there was a methamphetamine lab in his residence. Cowan was very nervous and shook uncontrollably. Cowan told Alkire that the only thing in his house was marijuana. Alkire asked Cowan if he could look around, and Cowan agreed. Cowan took Alkire to the garage to look around. Alkire found nothing in the garage and told Cowan he thought the chemical odor was coming from inside the house. Cowan then consented in writing to Alkire searching his residence.

Alkire entered the Cowan residence through a side door into a mudroom. Cowan pointed to a red bag in the mudroom that was partially opened. Alkire looked in the bag and found a jar containing coffee filters and a cloth shirt. The cloth shirt contained about 157 grams of methamphetamine. The red bag also contained another glass jar, a plastic jug with blue liquid, a can of Coleman fuel, a blue funnel, and a plastic two-quart container with some liquid and a baggie between the lid and the plastic. Alkire determined that this red bag was a mobile methamphetamine lab.

Other items used in the manufacturing of methamphetamine were found in the Cowan residence including: burnt blister packs which contained cold medicine with pseudoephedrine, a can of acetone, a plastic container of liquid, a bottle of Liquid Fire, scales that contained methamphetamine, a prescription bottle containing several baggies of methamphetamine, coffee filters containing powder, aluminum foil on a plate, and a respirator. Outside of the Cowan residence, Alkire also found a fitting that attached to an anhydrous ammonia tank.

While Alkire was speaking with Cowan, Cowan mentioned Norman's name and said Norman had been there the night before. Christine Cowan testified that the red bag found in her house belonged to Norman. Norman's fingerprint was found on one of the jars in the red bag. That jar contained a liquid weighing 0.68 grams that contained methamphetamine. Norman was friends with Cowan and stayed at the Cowan residence approximately twice a month. Christine Cowan testified that she had heard Cowan and Norman talking about cooking methamphetamine on more than one occasion. Cowan testified that the red bag belonged to him, but also admitted to having told the police that the red bag belonged to Norman.

Aubrey Christopher testified in rebuttal for the State that he met Norman while incarcerated, and Norman told him that he committed the crimes for which he was charged.

After the close of evidence and closing arguments, the jury found Norman guilty of trafficking of drugs in the first degree

(Count I) and trafficking of drugs in the second degree (Count II). On April 2, 2004, the trial court sentenced Norman as a prior drug offender to concurrent twenty-year sentences on each count. This appeal follows.

## Standard of Review

Although Norman initially conceded that the hearsay issue he raises in Point I was not preserved for appeal, Norman argues in his reply brief that it is properly preserved. We disagree. "The '[d]efendant is required to make a timely and specific objection at the time the evidence is sought to be introduced' to preserve it for appellate review." *State v. Benwire*, 98 S.W.3d 618, 628 (Mo.App. W.D.2003) (quoting *State v. Hill*, 929 S.W.2d 258, 262 (Mo.App. E.D.1996)).

In the instant case, Norman initially objected on hearsay grounds when the State questioned Alkire on direct examination whether Cowan had mentioned Norman's name, and the objection was sustained. The State later asked Alkire two similar questions about whether Cowan had ever mentioned Norman's name, and Norman did not object to either question. When the State asked Alkire how many times Cowan had used Norman's name, Norman objected and the State withdrew the question. However, two of the State's questions to Alkire regarding whether Cowan mentioned Norman's name were never objected to. Therefore, Point I was not properly preserved. Norman also concedes that Point II is not preserved. Accordingly, our only review is for plain error.

Under plain error review, an appellate court "should first examine whether the claim of plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." *State v.*

*Rogers*, 51 S.W.3d 879, 880 (Mo.App. W.D. 2001). Once plain error is facially established, an appellate court should then "review the claim to determine whether manifest injustice or a miscarriage of justice actually occurred." *Id.* If a claim of plain error does not facially establish substantial grounds for believing manifest injustice or miscarriage of justice has occurred, an appellate court should decline to review a claim of error under Rule 30.20. *Id.* "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *State v. Houston*, 139 S.W.3d 223, 227 (Mo.App. W.D.2004). Not all prejudicial or reversible error is plain error. *State v. Dowell*, 25 S.W.3d 594, 606 (Mo.App. W.D. 2000). "Plain error is evident, obvious and clear error." *State v. Bailey*, 839 S.W.2d 657, 661 (Mo.App. W.D.1992).

## Point I

In Point I, Norman argues the trial court erred by admitting Alkire's testimony that Cowan had mentioned Norman's name, because the testimony was not admissible under the co-conspirator exception to the hearsay rule.

In support of Point I, Norman argues that Alkire's testimony that Cowan said Norman's name did not fall under the co-conspirator exception to the hearsay rule, because by the time Cowan made the statements, the conspiracy had ended. Norman claims the conspiracy ended when Morgan sent the narcotics unit to investigate the chemical and marijuana odors at the Cowan residence. Norman argues that evidence is admissible under the co-conspirator exception only if the prosecution produces evidence of such an agreement between the defendant and the declarant to engage in an unlawful act prior to admitting evidence under the co-con-

spirator exception. Norman claims that the State did not produce evidence of an agreement from Christine Cowan's testimony until after Alkire's testimony was admitted under the co-conspirator exception. Norman argues that Cowan's statement was not in furtherance of any conspiracy, but was made to pin responsibility on Norman rather than himself. Norman also claims that although statements of co-conspirators made after the perpetration of a crime are admissible, this is only true where the statements are made for the purpose of concealing a crime.

Norman further argues that Cowan's statement was offered to show the truth of the matter asserted and that Norman was not at the Cowan residence when the officers found the methamphetamine. Norman claims that the only connection between himself and the drugs—other than the word of the Cowans, who were both admitted methamphetamine users, and the word of Aubrey Christopher, who was incarcerated—was Norman's fingerprint on a jar that was used to manufacture methamphetamine. Norman points out that the State's fingerprint expert admitted there was no way to determine how long the fingerprint was on the jar. Therefore, because Norman knew Cowan and was at Cowan's house to use the four-wheelers, Norman argues it is not inculpatory that Norman's fingerprint was found on an item that Cowan later used to manufacture methamphetamine. Norman argues that the fingerprint is the only evidence that did not depend on the credibility of the Cowans or Aubrey Christopher. Norman concludes that he was convicted in large part on hearsay that should not have been admitted and that the trial court's error was therefore so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful consideration.

"The general rule is that, where a timely objection is not made to the introduction of hearsay statements, their admission is not plain error." *State v. Aikens,* 3 S.W.3d 792, 796 (Mo.App. W.D. 1999). "The admission of unobjected-to hearsay almost never rises to the level of plain error." *State v. Cruz,* 971 S.W.2d 901, 904 (Mo.App. W.D.1998). "An allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted." *State v. Goodwin,* 43 S.W.3d 805, 818 (Mo.banc 2001). Where substantial corroborating evidence is properly admitted at trial, a trial court's admission of hearsay does not amount to plain error. *State v. Stallings,* 957 S.W.2d 383, 389 (Mo.App. W.D.1997).

In *State v. Mead,* 105 S.W.3d 552, 554–55 (Mo.App. W.D.2003), a police officer testified at trial that an accomplice had mentioned the defendant's name, but the defendant did not object on hearsay grounds. *Mead* held that even if the police officer's testimony was inadmissible, plain error review was inappropriate because the victim identified the defendant four separate times, so there was no showing of manifest injustice or a miscarriage of justice. *Id.* at 556–57.

The instant case is on point with *Mead.* There was substantial, properly admitted corroborating evidence linking Norman to the methamphetamine found at the Cowan residence. Norman's fingerprint was found on a jar containing methampetamine. Christine Cowan testified that the red bag found in her house belonged to Norman and that she had heard Cowan and Norman talking about cooking methamphetamine on more than one occasion. In addition, Aubrey Christopher testified that Norman admitted to having committed the crimes for which he was charged while he was in custody. Even if Alkire's

testimony that Cowan mentioned Norman's name was inadmissible hearsay, there was other evidence linking Norman to the methamphetamine, so no manifest injustice or miscarriage of justice occurred. We decline to review for plain error.

Point I is denied.

## Point II

■ In Point II, Norman argues the trial court plainly erred in overruling Norman's objection to submitting both Count I and Count II to the jury and by sentencing Norman on both counts, because Count II was a lesser-included offense of Count I, and submitting both counts to the jury constituted double jeopardy.

Norman cites *Salmons v. State,* 16 S.W.3d 635, 638 (Mo.App. W.D.2000), and acknowledges that this court has held that there is no double jeopardy violation where the defendant is convicted of both manufacture of methamphetamine and possession of pseudoephedrine with intent to manufacture methamphetamine.

In *Salmons,* 16 S.W.3d at 638, we said:

Conviction for manufacture of methamphetamine requires proof of manufacture along with a mental state of *awareness of the nature of methamphetamine.* Conviction for possession of pseudoephedrine requires proof of *awareness of the presence of pseudoephedrine.* These are distinct proof requirements. To convict of manufacture of methamphetamine, the state need not prove the defendant was aware of the presence of pseudoephedrine. To convict of possession of pseudoephedrine, the state need not prove the defendant was aware of the nature of methamphetamine. Therefore, conviction of each crime requires proof of an element which conviction of the other crime does not, and

conviction for both does not violate double jeopardy.

Norman argues that *Salmons* is distinguishable from the instant case because the issue here is the manufacture of the illegal drug and the possession of that drug upon completion. Norman claims that possession of methamphetamine is a lesser-included offense of manufacturing because it is impossible not to possess the drug once it has been manufactured, and because possession is established by the same facts required to establish manufacturing. Norman cites *State v. Derenzy,* 89 S.W.3d 472, 474 (Mo.banc 2002), where the supreme court found that possession of marijuana is a lesser-included offense of delivery of a controlled substance within 2,000 feet of a school. *Derenzy* reasoned that it is impossible to deliver or transfer a controlled substance without exercising possession over the substance. *Id.* We do not find *Derenzy* controlling because we have different facts.

■ "[A] defendant may be convicted in one proceeding of more than one offense based upon the same conduct if the legislature·intends to punish the conduct under more than one statute." *State v. Villa–Perez,* 835 S.W.2d 897, 903 (Mo.banc 1992). If, as here, the legislature's intent is not expressed in the statutes in question, we look to the general cumulative punishment provisions of section 556.041. *Id.* Section 556.041 provides, in relevant part: "When the same conduct of a person may establish the commission of·more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if (1) One offense in included in the other, as defined in § 556.046[.]"

■ Section 556.046.1(1) defines included offenses as offenses "established by proof of the same or less than all the facts required to establish the commission of the

offense charged[.]" Accordingly, "[i]f each of the offenses for which the defendant was convicted requires proof of an element which the other does not, the offenses are not included offenses within the meanings of § 556.046.1(1)." *Villa Perez*, 835 S.W.2d at 903–04. "The elements of the two offenses must be compared in theory, without regard to the specific conduct alleged." *Derenzy*, 89 S.W.3d at 474.

In *State v. Brown*, 750 S.W.2d 139, 142 (Mo.App. E.D.1988), the appellant argued that convictions for both possession and manufacture of marijuana constituted double jeopardy. In its analysis the court focused on the elements of the offenses charged. *Brown* held that "[t]o convict a defendant for possession, the state must prove that he had knowledge of the presence and nature of the substance. The mental state pertains only to having the controlled substance under one's dominion or control, or having access to it." *Id.* (citations omitted). On the other hand, "[t]o convict a defendant of manufacturing, the state had the burden of showing the planting, cultivating, growing, or harvesting of marijuana." *Id. Brown* found that the appellant's claim lacked merit because the respective offenses contain different elements. *Id. Brown* concluded that "'possession' and 'manufacture' of marijuana are distinct and separate offenses." *Id.*

In the instant case, Norman was charged with both trafficking of drugs in the first degree and trafficking of drugs in the second degree. The elements of trafficking in the first degree are that (1) the defendant *manufactured* or produced by chemical synthesis 90 grams or more of any material, compound, mixture, or preparation containing any quantity of methamphetamine *and* (2) he knew that the material, compound, mixture, or preparation he manufactured or produced was or contained methamphetamine. MAI-CR 3d 325.11.1.

The elements for trafficking in the second degree are that (1) the defendent *possessed* 90 grams or more of a material, compound, mixture or substance containing any quantity of methamphetamine *and* (2) he knew or was aware of the presence and nature of the controlled substance. MAI-CR 3d 325.15.

In order to convict Norman of trafficking in the first degree, the State did not need to prove that Norman possessed 90 grams or more of a material, compound, mixture, or substance containing any quantity of methamphetamine. In other words it is not necessary to prove the defendant exercised dominion or control (possession) over the manufactured product to prove the offense of manufacturing. Likewise, in order to convict Norman of trafficking in the second degree, the State did not need to prove that Norman manufactured or produced by chemical synthesis 90 grams or more of any material, compound, mixture, or preparation containing any quantity of methamphetamine. The manufacturing process is not an element of possession. Therefore, conviction of each crime required proof of an element which conviction of the other crime did not, and conviction for both does not violate double jeopardy.

Point II is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

SMART and NEWTON, JJ., concur.