STATE of Missouri, Respondent,

v.

James E. BENNETT, Appellant.

No. WD 65414.

Missouri Court of Appeals,
Western District.

Sept. 19, 2006.

---

Rebecca L. Kurz, for Appellant.

Shaun J. Mackelprang, Jefferson City, for Respondent.

Before HOWARD, C.J., ELLIS and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

James Bennett appeals from his jury convictions for first-degree robbery and armed criminal action. Bennett contends the trial court plainly erred in failing to intervene, *sua sponte*, during the prosecu-

tor's closing arguments. For reasons explained herein, we find no error and affirm the convictions.

### FACTUAL AND PROCEDURAL HISTORY

On the evening of December 31, 2003, Bennett threatened employees at the Piggy's Market with a knife and forced them to give him money from the cash register. Bennett fled the scene driving a red Ford Taurus. The Market employees notified police of the license plate number. Officers promptly located the Taurus, turned on their sirens, and followed the swerving vehicle for several blocks. When the chase ended, officers saw the knife sticking out from under Bennett's leg and found bags of money in the vehicle. Bennett smelled strongly of alcohol. His speech was slurred, and his eyes were watery and bloodshot. Bennett refused to perform any sobriety tests or submit to a blood or breath test.

Bennett was arrested and charged with first-degree robbery and armed criminal action. At trial, Bennett sought to present a defense of involuntary intoxication. Bennett's wife testified that she had discarded some LSD into an empty beer can that Bennett "could possibly" have drunk from prior to the robbery. She also testified that Bennett "probably" drank four beers before leaving his home that evening to go to the store for more beer.

The jury convicted Bennett on both counts. The court sentenced him, as a prior and persistent offender, to consecutive prison terms of twenty-five years for first-degree robbery and five years for armed criminal action.

### ANALYSIS

In his sole point on appeal, Bennett contends the trial court erred in failing to intervene, *sua sponte,* when the prosecutor made misstatements during closing argument regarding the burden of proof on the defense of involuntary intoxication. Because Bennett did not object to the prosecutor's statements, he failed to preserve this claim for appeal and now seeks plain error review.

 Pursuant to Rule 30.20, we have discretion to review for "plain errors affecting substantial rights." This review involves a two-step process. First, we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted. *State v. Hagan,* 113 S.W.3d 260, 267 (Mo.App.2003). Plain error is evident, obvious, and clear. *State v. DeWeese,* 79 S.W.3d 456, 457 (Mo.App. 2002). Absent a finding of facial error, an appellate court should decline its discretion to review the claim. *Hagan,* 113 S.W.3d at 267. If plain error is found, we proceed to the second step to consider whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id.*

 Statements made in closing argument will rarely amount to plain error, and any assertion that the trial court erred for failure to intervene *sua sponte* ignores the possibility that an attorney may not have objected for strategic reasons. *State v. Cole,* 71 S.W.3d 163, 171 (Mo. banc 2002). Without an objection, "the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v. Clemmons,* 753 S.W.2d 901, 908 (Mo. banc 1988). A party cannot fail to request relief, gamble on the verdict, and then, if adverse, request relief for the first time on appeal. *State v. McGee,* 848 S.W.2d 512, 514 (Mo.App.1993). To be entitled to relief under the plain error rule, a defendant must go beyond a mere showing of demonstrable prejudice to show manifest injustice affecting substantial

rights. *State v. Parker*, 856 S.W.2d 331, 332 (Mo. banc 1993). Even if the argument is improper, a conviction will be reversed only if it is established that it had a decisive effect on the jury's determination. *Id.* at 333.

■ The defense of involuntary intoxication arises from Section 562.076, RSMo 2000, which provides:

1. A person who is in an intoxicated or drugged condition, whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct.
2. The defendant shall have the burden of injecting the issue of intoxicated or drugged condition.

In cases where the defendant has presented evidence of this defense, the state retains the burden of proof on all elements of the crime and must prove beyond a reasonable doubt that the defendant is not entitled to an acquittal by reasons of involuntary intoxication. *See* MAI–Cr3d 310.52.

At trial, defense counsel began his closing argument as follows:

Has the State proven beyond a reasonable doubt that (Bennett) was not involuntarily intoxicated when he committed that crime? That's it, that's really the only question left for you guys.

Defense counsel later read to the jury Instruction No. 8, regarding involuntary intoxication, which stated:

The State has the burden of proving beyond a reasonable doubt that the defendant is not entitled to an acquittal by reason of an involuntary intoxicated or drugged condition. If you find that the defendant was in an involuntarily produced intoxicated or drugged condition which deprived the defendant of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct at the time of any offense submitted in these instructions, or if you have reasonable doubt whether he was in an involuntarily produced intoxicated or drugged condition which deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct at the time of the offense submitted in these instructions, you must find the defendant not guilty.

During rebuttal, the prosecutor responded to defense counsel's closing argument as follows:

Ladies and gentlemen of the jury, what the State has to prove to you it has done and that is on or about December 31, this defendant robbed Piggy's Market, that he did so with a deadly weapon and dangerous instrument, and that's the knife. So we've proved Count I. And Count II is the fact that he used a knife or dangerous instrument in committing the robbery. So they go together. We proved them both.

[Defense counsel] would have you believe that we have to prove a negatives [sic]. How do you prove a negative? Well, you don't. We have no way to show that the defendant was on LSD, and why is that? Because he wouldn't submit to a blood test, so how can we prove he was on LSD?

There's two prongs that you have to find. The first is you have to find that the intoxication was involuntary; and that's what [defense counsel] keeps saying, that it was involuntary. But you also have to find that he was so much so involuntarily intoxicated that he couldn't appreciate the wrongfulness of robbing the store. There's no evidence of that.

He was able to use a knife, he was able to demand money, take the money and he was able to drive a car.... If he's so intoxicated, so drugged, then he wouldn't be able to do that.

. . . .

Even the defendant's own wife admitted LSD doesn't make you rob stores. He knew she had LSD, or said she thought it was, but was there any evidence that what she had was LSD? She assumed it was LSD, but there's no evidence, and with a two-year old [child] in the house she put it in an empty beer can he can reach, and there's 12 empty beer cans and of those cans he grabbed that one that was empty. Who drinks from an empty beer can?

We have to prove every element of the crime, and we've done that, and we've proved it beyond a reasonable doubt.

Bennett contends the prosecutor misled the jury by creating the impression that the State only had to prove that the defendant took money from Piggy's while armed with a knife, in order to convict him on both counts. Bennett argues the prosecutor misstated the elements of each offense by omitting the requirement that the State must prove beyond a reasonable doubt that the defendant was not entitled to an acquittal by reason of involuntary intoxication. He also asserts the prosecutor incorrectly argued that the State did not have to prove a negative and improperly suggested that Bennett had the burden of proving, not merely injecting, his defense of involuntary intoxication.

■ We disagree that the jury was misled by the prosecutor's rebuttal argument. Rather than attempting to fully explain the State's burden, the prosecutor was merely responding to statements made during defense counsel's closing argument. Thus, the prosecutor addressed those factual aspects of the case that the defense claimed had not been proven. The prosecutor also properly "point[ed] out to the jury an absence of evidence to support a theory suggested by the defendant." *State v. Mease*, 842 S.W.2d 98, 110 (Mo. banc 1992).

The prosecutor's explanation was ambiguous as to which party had the burden of proof on the involuntary intoxication defense, but there were no affirmative misstatements of law. For example, the prosecutor never stated that the jurors could not acquit Bennett if they had reasonable doubts about whether he was intoxicated. While the prosecutor did not specifically address the State's burden of proving that Bennett was not subject to acquittal based on the intoxication defense, he implicitly did so by stating, "We have to prove *every* element of the crime, and we've done that, and we've proved it beyond a reasonable doubt."

The trial court had no duty to intervene, *sua sponte*, because the prosecutor's statements were reasonably responsive to arguments raised by the defense. Even if certain elements of the State's burden were omitted, the trial court directed the jury to be guided by the instructions and carefully explained that the arguments of counsel were not evidence.

■ Bennett does not dispute that the jury was properly instructed regarding the State's burden on the involuntary intoxication defense. "Absent a showing to the contrary, we must presume that the jury properly followed the trial court's instructions in rendering its verdict." *State v. Chavez*, 128 S.W.3d 569, 578 (Mo.App. 2004). The trial court read two instructions to the jury regarding the State's burden and defense counsel re-read one of the instructions during closing argument. Regardless of whether the prosecutor mis-

stated the law at one point, where the record shows the burden of proof was correctly stated multiple times and the jury was properly instructed, there is no manifest injustice. *State v. Edwards,* 116 S.W.3d 511, 537–38 (Mo. banc 2003). The repetitive instructions negated any likelihood that the prosecutor's comments decisively affected the jury's verdict.

Bennett has failed to show any error or manifest injustice resulting from the trial court's failure to intervene in the prosecutor's closing argument. Accordingly, the judgment is affirmed.

All concur.