**STATE of Missouri, Respondent,**

v.

**Joe D. POWELL, Appellant.**

**No. WD 69307.**

Missouri Court of Appeals, Western District.

June 2, 2009.

Frederick J. Ernse, Kansas City, MO, for appellant.

Shaun J. Mackelprang, James B. Farnsworth, Jefferson City, MO, for respondent.

Before DIV III: HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS and LISA WHITE HARDWICK, Judges.

HAROLD L. LOWENSTEIN, Judge.

Joseph Powell, Sr. appeals the circuit court's judgment of his convictions for murder in the first degree in violation of § 565.020.1[1] and armed criminal action in violation of § 571.015. On appeal, he presents three points. We affirm.

Powell and the victim were married and had two children. Due to marital problems, the victim moved in with her mother and Powell moved in with his girlfriend. On June 21, 2004, Powell took his girlfriend's gun and drove to the victim's mother's house. He parked four blocks away and walked to her house. When he arrived at the house, he discovered that nobody was home so he went around back to wait for the victim.

Later that evening, the victim and her family returned to the house. They went inside the house. The victim realized that she left something in the car and went back to the car. At this time, Powell walked around the house. The victim's sister saw Powell and took the children inside the house and called 911. The victim's mother stayed outside with the victim. Powell grabbed the victim by the neck and pointed the gun at her head. Both the victim and the victim's mother begged Powell to stop. Powell fired two shots and killed the victim. The victim collapsed into her mother's arms. Powell tossed the gun into a flowerbed and ran away.

The police were called to the scene and eventually caught Powell. He confessed to shooting the victim. The police arrested him and the State charged him with murder in the first degree and armed criminal action. At trial, Powell conceded that he shot the victim but claimed that he did not deliberate on the murder because he suffered from schizoaffective disorder and

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

borderline personality disorder. The circuit court allowed the State to call Dr. Jarrod Steffan to rebut Powell's claim that he suffered from these disorders. At the close of evidence, the jury returned a verdict of guilty on both counts. The circuit court entered judgment and sentenced him to life in prison without parole on the murder in the first degree charge and twenty five years on the armed criminal action charge. This appeal follows.

In his first point on appeal, Powell claims that the circuit court erred in allowing the State to elicit rebuttal testimony from Dr. Steffan, a clinical psychologist, because his testimony (1) exceeded the scope of rebuttal and (2) invaded the providence of the jury. Since these are two distinct claims, we will address them separately. In the first part of his claim in this point, Powell claims that the circuit court erred in overruling his objection to Dr. Steffan's testimony regarding his state of mind on the date of the murder because it exceeded the scope of proper rebuttal testimony because his defense expert gave no testimony regarding his state of mind at the time he committed the murder.

 Rule 27.02 and § 546.070 set forth the order of a trial. After the defendant has completed the presentation of his evidence, the State may offer rebuttal evidence. Rule 27.02(k); § 546.070(3). In doing so, the State may offer any evidence that, directly or indirectly, explains or disproves the defendant's evidence. *State v. Martin*, 211 S.W.3d 648, 653 (Mo.App. 2007). The State may introduce rebuttal evidence to rebut the defendant's evidence regardless of the evidence that it introduced during its case. *Id.* Thus, the State may introduce rebuttal evidence even if it could have introduced the evidence during the presentation of its case or, on the opposite end of the spectrum, even if the evidence is cumulative of the evidence that it produced during its case. *Id.* Furthermore, the State may introduce evidence on rebuttal even if the evidence would otherwise be inadmissible. *Id.* The circuit court has great discretion in admitting and regulating the scope of a party's rebuttal evidence. *Id.* at 653. We will overturn the circuit court's decision only if it abuses that discretion. *Id.* The circuit court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable that it shocks this court's sense of justice and indicates a lack of careful consideration. *Id.* at 652–53.

To prove that he acted without deliberation, Powell called Dr. Scott Brown, a psychologist, who testified that Powell suffered from schizoaffective disorder and borderline personality disorder. Dr. Brown testified that the typical symptoms of these conditions include delusions, paranoia, hallucinations, mood disturbances, depression, fear of abandonment, panic, and impulsivity. Dr. Brown also testified that, due to Powell's conditions, he believed that the victim was out to get him:

> In Mr. Powell's case, he had some substantial paranoia, really believing that his wife was out to get him, that her family was out to get him; really believing that it was all about him, that it wasn't justified, that he couldn't trust them. He also had been depressed and had been brooding and had a history of depression, as evidenced by the hospitalizations.

During cross-examination, the State asked Dr. Brown about Powell's state of mind during the murder, and he testified that Powell's mind was "a swirling mix of terror, paranoid delusion, sadness, and anger." On cross, Dr. Brown also testified that he believed that Powell intended only to scare the victim.

To rebut Dr. Brown's testimony, the State called Dr. Steffan. Over Powell's objection, Dr. Steffan testified that Powell was not suffering from any disorder at the time of the murder:

Q: Doctor, when the defendant was waiting in the back yard with a loaded gun, was he exhibiting anything that suggested he was suffering from a schizoaffective disorder?

A: No. There was no information I obtained from my evaluation of Mr. Powell or in the police reports that would indicate that he had anything associated with schizoaffective disorder at that time.

Q: When the defendant is coming around the side of the house with a loaded gun, was he exhibiting anything that suggests that he suffered from a schizoaffective disorder?

A: No, he was not.

Q: When the defendant pointed the loaded gun at the head of [the victim], was he exhibiting anything that suggested that he suffered from a schizoaffective disorder?

A: No. My evaluation revealed none of that.

Q: When the defendant shot the gun the first time, was he exhibiting anything that suggests that he suffered from a schizoaffective disorder?

A: No, there was nothing.

Q: When the defendant shot the gun the second time striking [the victim], was he exhibiting anything that suggests that he suffered from a schizoaffective disorder?

A: No. There were no signs or symptoms of a schizoaffective disorder influencing his behavior at that time.

Dr. Steffan also testified that, although Powell did suffer from some personality disorder, there was no evidence that, at the time of the murder, "his personality disorder disturbed his mental state to the point that he wasn't aware of what he was doing or that it interfered with what happened."

Powell concedes that his expert testified that he was suffering from schizoaffective disorder and borderline personality disorder and so the State was justified in presenting rebuttal evidence that he was not suffering from these two disorders. He claims, however, that he did not elicit any testimony from Dr. Brown concerning his state of mind when he committed specific actions on the date of the murder, and therefore, the circuit court erred in allowing the State to elicit testimony from Dr. Steffan regarding his state of mind during each specific action on the date of the murder. He concedes that Dr. Brown did testify on cross that Powell was suffering from schizoaffective disorder and borderline personality at the time of the murder but maintains that the State cannot rebut testimony that it elicits on cross-examination.

The circuit court did not err in overruling Powell's objection to Dr. Steffan's testimony. Even assuming that Powell is correct that the State cannot rebut testimony that it elicits on cross-examination, his claim must fail because the record clearly establishes that Dr. Brown's testimony put the issue of Powell's state of mind at the time of the murder into issue at trial. The obvious inference from Dr. Brown's testimony was that Powell could not deliberate on the murders because, at the time he murdered the victim, he was suffering from schizoaffective disorder and borderline personality. In fact, Dr. Brown's testimony would have been irrelevant unless his testimony was used to infer that, at the time Powell committed the murder, he suffered from schizoaffective disorder and borderline personality. Pow-

ell, therefore, is incorrect in his assertion that Dr. Brown's testimony did not open up the door for the State to admit Dr. Steffan's testimony that Powell was not suffering from schizoaffective disorder and borderline personality at the time he committed the murder. The circuit court did not err in overruling Powell's objection to Dr. Steffan's testimony.

■ In this point, Powell also claims that the circuit court erred in allowing Dr. Steffan to testify that Powell was not acting impulsively at the time of the murder because this conclusion invaded the providence of the jury. Specifically, he claims that this conclusion invaded the providence of the jury because Dr. Steffan's testimony went to the issue of whether or not he deliberated, which was an ultimate issue for the jury. Powell concedes that he has not preserved his claim because he failed to object to Dr. Steffan's testimony. He, therefore, requests plain error review pursuant to Rule 30.20.[2]

Rule 30.20 grants us authority to consider "plain errors affecting substantial rights ... when [we find] that manifest injustice or miscarriage of justice has resulted" from the plain error. Under plain error review, we first examine the record to determine whether or not the appellant's claim is one that, on its face, establishes grounds for believing that a manifest injustice has resulted from plain error. *State v. Norman,* 178 S.W.3d 556, 560 (Mo.App.2005). If a plain error claim does not facially establish substantial grounds for believing that manifest injustice has occurred, then we must decline review under Rule 30.20. *Id.* If our review of the record determines that plain error is facially established then we must review the record to determine whether or not a man-

ifest injustice or a miscarriage of justice actually occurred. *Id.* "The plain error rule should be used sparingly and does not justify a review of every alleged error that has not been properly preserved for appellate review." *Id.* (internal quotation marks omitted). "Plain error is evident, obvious[,] and clear error." *Id.* (internal quotation marks omitted).

As we noted earlier, the circuit court has great discretion in the admission of rebuttal evidence. *Martin,* 211 S.W.3d at 652. Thus, given the circuit court's discretion in this area and the plain error standard, to succeed on his claim, Powell must establish that the circuit court abused its discretion in allowing Dr. Steffan to testify because it is clear and obvious from the record that Dr. Steffan's testimony invaded the province of the jury.

During his direct examination, Dr. Brown testified that Powell's disorders affected his impulse control:

Q: Do disorders have any effect on impulse control?

A: Yes. In this case and in most cases, especially with borderline personality disorder, the person is very impulsive....

A: It can lead the person to be much more impulsive than most of us ever experience. They follow their emotions. So if their emotions are good, then they are good. If their emotions are really frightened or really scared, then they respond out of that, and as I said, their emotions are labile, they move around. They're up and down; they are scared, they are happy, and so they follow those and it can directly affect their ability to manage their impulses. As a matter of fact, they don't even think they are im-

---

**2.** All rule references are to Missouri Rules of Criminal Procedure, 2008, unless otherwise indicated.

pulsive. They tend to think, well, this is what I feel so this is what I have to do. In rebuttal, the State asked Dr. Steffan if there was "evidence that the defendant was acting impulsively on June the 21st, 2004, at or near the time of the murder?" Dr. Steffan replied that there was no evidence that Powell was acting impulsively.

Powell is correct that, while an expert is allowed to give testimony regarding whether or not the defendant had the ability to deliberate, he is not allowed to give testimony regarding whether or not the defendant actually deliberated. *State v. Jones,* 134 S.W.3d 706, 717 (Mo.App.2004). This does not help Powell's claim, however, because Dr. Steffan's testimony that there was no evidence that he was acting impulsively did not go to the issue of whether or not he deliberated. Rather, by testifying that Powell was not impulsive, Dr. Steffan was merely stating that Powell had the ability to deliberate. Dr. Steffan never testified that Powell did deliberate on the murder.

Furthermore, even assuming that Dr. Steffan's testimony went to the issue of whether or not he actually deliberated, Powell's claim would still fail because the record establishes that his testimony was in direct response to Dr. Brown's testimony that Powell's disorders caused him to act impulsively. As we noted above, the State has great leeway in presenting rebuttal evidence and may even introduce evidence that would otherwise be inadmissible. *State v. Martin,* 211 S.W.3d at 653. Thus, even if Dr. Steffan's testimony were inadmissible, the State was allowed to introduce it because it directly rebutted Powell's expert's testimony that Powell was acting impulsively. Powell, therefore, has failed to show that it is clear and evident from the record that the circuit court should have *sua sponte* struck Dr. Steffan's testimony.

In his second point on appeal, Powell claims that the circuit court erred in failing to *sua sponte* interrupt the prosecutor's opening statement because the record establishes that the prosecutor's opening statement was argumentative in that he pointed out which of Powell's actions constituted murder in the first degree. Powell concedes that he did not object to the prosecutor's opening statement and so he requests plain error review pursuant to Rule 30.20.

The purpose of an opening statement is to inform the circuit court and the jury of the "general outline of the anticipated evidence and its significance." *State v. Hill,* 866 S.W.2d 160, 163 (Mo.App. 1993). The prosecutor should limit his opening statement to "provable factual statements" and should not include arguments. *State v. Smallwood,* 230 S.W.3d 662, 664 (Mo.App.2007). The prosecutor is allowed to make conclusory statements that the evidence will prove that the defendant committed the charged crime. *Id.* The circuit court has broad discretion in regulating the scope of the prosecutor's opening statement. *Id.*

Courts will grant plain error review on the basis of an error in the prosecutor's opening statement only when the defendant can show that the prosecutor's remark had a "decisive effect on the jury's determination." *State v. Copeland,* 928 S.W.2d 828, 842 (Mo. banc 1996) (overruled on other grounds by *Joy v. Morrison,* 254 S.W.3d 885, 888 n. 7, 889 (Mo. banc 2008)). This is a difficult standard to meet because the courts have concluded that the impact of the prosecutor's opening statement diminishes after the parties introduce evidence and give their closing arguments. *Smallwood,* 230 S.W.3d at 665.

In Powell's case, the prosecutor concluded his opening statement by pointing out

which of Powell's actions constituted deliberation:

Now, why is this murder in the first degree? It's murder in the first degree based upon the evidence and based upon what the defendant said, 'I waited. I went over there, I had a gun, and I waited.' At no time prior to this did he make any indication to [the victim] what he was going to do.

Another thing that makes it murder in the first degree is that he fired twice. There is a time frame, no matter how brief, in between the shots. Again, we don't know which shot went into her brain, the first or the second.

And what also makes this murder in the first degree is that not only did [the victim] beg for her life, 'I'll come home with you, Joe,' but her mother was begging for her life, and the defendant went ahead and gunned her down anyway, knowing that just inside the house were their two children and her other sister.

Based on this evidence, we're going to come back to you and ask you to find him guilty of murder in the first degree, cool reflection, with deliberation, and also armed criminal action for using a weapon.

Even assuming that the prosecutor's argument was argumentative, Powell is not entitled to relief because he has not established that the record facially shows that the prosecutor's statement resulted in manifest injustice. Prior courts have held that a defendant suffers no manifest injustice from a prosecutor's remark in his opening statement when the record establishes that the prosecutor's remark was supported by the evidence at trial, and the circuit court instructs the jury that it should not consider the prosecutor's opening statement to be evidence. *Id.*

In this case, the circuit court instructed the jury that the parties' opening state-

ments were not evidence. Furthermore, the record also establishes that the prosecutor's remarks were supported by evidence at trial. Specifically, the victim's mother testified that she was out in the garage with the victim when Powell threatened to kill her. She also testified that both she and the victim begged Powell to spare the victim's life. The victim's sister testified that she was inside the house with the two children when Powell murdered the victim. Thus, the record establishes that the prosecutor's statements were supported by the evidence.

■ Powell concedes that the prosecutor's statements were supported by the evidence and that the circuit court instructed the jury that the prosecutor's opening statement was not evidence. Nevertheless, he claims that the prosecutor's remarks regarding the facts that the victim begged him to spare her life and the children were present had a decisive effect on the jury's verdict because (1) the prosecutor misinformed the jury that, if it found these facts to be true, it had to find that Powell was guilty of first degree murder, and (2) these facts were irrelevant to any issue in the case and used solely to inflame the passions of the jury. We disagree.

Powell contends that the prosecutor's statement had a decisive effect on the jury's verdict because the prosecutor's remarks had the effect of telling the jury that, if it found these facts to be true, it had to find that Powell was guilty of first degree murder. Powell claims that, because the jury had not yet been instructed on the law of deliberation, the prosecutor's statement colored the jury's view of the evidence. In making this argument, however, Powell mischaracterizes the prosecutor's remark. The prosecutor stated the facts that he believed established deliberation. He did not inform the jury that these facts were conclusively determina-

tive of whether or not Powell deliberated. And, in fact, at the end of his opening statement, the prosecutor stated that "[b]ased on this evidence, we're going to come back to you and ask you to find him guilty of murder in the first degree[.]" Thus, the prosecutor's concluding remark shows that he was not arguing that these facts conclusively established that Powell deliberated.

Powell is also incorrect in his assumption that these facts were not relevant. Powell's defense at trial was that he went over to the victim's mother's house to see his children because it was Father's Day. He admitted that, when he saw the victim, he shot her but claimed that he did not deliberate on the murder and had just "snapped." In that regard, the record establishes that prosecutor used these facts at trial to establish that Powell deliberated on the victim's murder. The prosecutor argued at trial that because Powell did not go see his child and instead immediately attacked the victim, the jury could have inferred that he did not go over there to visit his children for Father's Day but went over to murder the victim, which would support an inference that he deliberated on the murder. Furthermore, the prosecutor used the fact that the victim begged for her life to argue that the victim had done nothing to cause Powell to snap. Thus, these facts were relevant to whether or not he deliberated on the murder. Powell, therefore, has failed to show that he suffered manifest injustice from the prosecutor's remarks. The circuit court did not err in failing to *sua sponte* interrupt the prosecutor's opening statement to strike his remarks regarding the facts that established that Powell deliberated on the murder. We, therefore, decline plain error review.

In his third point on appeal, Powell claims that the circuit court erred in failing to *sua sponte* strike the State's closing argument regarding the victim's good character because the victim's character was not at issue in the trial and was used solely to inflame the passion of the jury. Powell concedes that he did not preserve his claim because he failed to object to the prosecutor's closing argument. He, therefore, requests plain error review pursuant to Rule 30.20.

Well-established law provides that comments made during closing arguments will rarely constitute plain error because trial strategy is an important part of closing arguments. *State v. Bennett*, 201 S.W.3d 86, 88 (Mo.App.2006). Moreover, any claim of error suggesting that the circuit court should have *sua sponte* interrupted a party's closing argument ignores the possibility that the attorney did not object for strategic reasons. *Id.* In the absence of an objection, the circuit court's options are " 'narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.' " *Id.* (citation omitted). "A party cannot fail to request relief, gamble on the verdict, and then, if adverse, request relief for the first time on appeal." *Id.* Hence, plain error in a closing argument occurs only if the appellant can establish that the improper statements in the closing argument resulted in manifest injustice by having a decisive effect on the jury's determination. *Id.* at 88–89. As a practical matter, these claims are generally denied without explanation. *State v. Collins*, 150 S.W.3d 340, 349 (Mo.App. 2004).

At trial, the prosecutor used a portion of his closing rebuttal argument to point out the facts that established that Powell deliberated on the victim's murder:

It wasn't his intention to frighten, it was his intention to murder, and the one person that's been forgotten about that

bears out his intention is [the victim]. We don't have some drunken floozy in [the victim]. Who was she with? She was with her children at her mother's. Where is she when she's gunned down? Is she in a bar with a boyfriend, is she in bed with a boyfriend? She was with her children and her mother and her sister, going to her mother's house to stay away from him, and everything was so safe, everything was so safe. 'I'm with my mother, all I've got to do is just get into the house with my mother, my sister, and my children and I'm safe,' but there's one place where the plan fell apart. Unintentionally, she goes back to the car to get some clothing articles, and in that time is when only a well-thought-out plan, as well thought out as he can do .... he catches her.... [H]is plan overcame their dropping of their guard, and that tells you, [the victim] and her actions tell you, that's murder in the first degree.

Don't forget [the victim], what she was doing that day, who she was, and what happened, because to kill someone like [the victim], you want to do it, you want to do it, and when you're surrounded by family and people who love you, you're going to have to plan to do it, because he knew that. The one statement that he made to the detective, 'always with her family.'

Powell claims that the circuit court should have *sua sponte* interrupted the prosecutor's closing rebuttal remarks and struck that portion of his statement because it is clear and obvious that the prosecutor was attempting to inflame the passion of the jury by comparing the victim's apparent family oriented lifestyle with Powell's lifestyle. We disagree. In making his argument, Powell mischaracterizes the prosecutor's remarks and their inferences. The prosecutor's remarks were not character references but were inferences from the circumstantial evidence that tended to rebut Powell's defense theory that he murdered the victim in rage.

Consistent with Powell's theory at trial that there was no evidence that he deliberated on the murders, Powell's counsel argued in his closing argument that Powell "snapped" and murdered the victim because he was tired of all of her lies:

> At this point, Joseph Powell is upset and he is hurt and he is suffering from mental illness and he is not thinking clearly. He is not thinking coolly, he is not deliberating, but he is going to make a scene, and [the victim] comes home and he goes out front and he confronts her. It is when her mother, Mary, comes out and she says, '[she] is going home with you,' *that he snaps*, and he tells Detective Taylor this. He is completely upfront. He tells him, 'I was tired of the lies and I just shot,' and he shot twice, and you never heard any evidence that there was a pause between his shots or that there was any length of time in between the shots. *He shot twice; not with cool reflection, he snapped.*

(Emphasis added.)

Given this context, it is obvious that the prosecutor was not using the victim's good character to inflame the jury. Rather, he was using the victim's lifestyle to show that Powell had to deliberate on the murders and did not just "snap." The prosecutor's point in stating that the victim spent a substantial amount of time with her family was to show that Powell had to wait for an opportunity to confront the victim when she was alone. The prosecutor was arguing that the jury could infer that Powell deliberated on the murder because he had to wait until the victim was alone. Furthermore, the prosecutor's point in stating that Powell found her with

her children and did not find her in a bar or in bed with another man was to show that the victim had done nothing to cause Powell to "snap." The prosecutor was free to use this evidence to argue to the jury that the victim had done nothing in the moments before her death to cause Powell to "snap" and kill her. The prosecutor's statements were legitimate inferences from the evidence. Powell, therefore, has failed to establish that it is clear and obvious from the record that the circuit court erred in failing to *sua sponte* interrupt the prosecutor and strike his closing argument. We, accordingly, decline plain error review. We affirm the circuit court's judgment.

All Concur.