**STATE of Missouri, Respondent,**

v.

**Lloyd Thomas DIXON, Appellant.**

**No. 52675.**

Supreme Court of Missouri,
Division No. 1.

Nov. 13, 1967.

———◆———

Norman H. Anderson, Atty. Gen., Jefferson City, Selden M. Jones, Special Asst. Atty. Gen., Kansas City, for respondent.

Shaw, Hanks & Bornschein, by Joseph Howlett, Clayton, for appellant.

WELBORN, Commissioner.

Lloyd Thomas Dixon was charged by information in the St. Charles County Circuit Court with burglary in the second degree and stealing in connection with the burglary. Tried as a second offender (§ 556.280, RSMo 1959, V.A.M.S.), the jury found him guilty of burglary and stealing and the court fixed the punishment at consecutive 4-year sentences on each charge.

At around 2:00 A.M., June 17, 1966, the St. Charles Police Department received a call about a "break-in" at the North Side Liquor Store, located on North Third Street in St. Charles. Officers who went to that location discovered that a plate glass window in the front of the store had been broken, leaving an opening wide enough for a man to enter. Sergeant Kennedy was at the store for about ten minutes and was directed to search for the person or persons involved in the breaking. Sergeant Kennedy drove his police car to a point some 4½ blocks from the store and "went on stake-out." After he had been parked for about fifteen minutes, he saw a man walking south on the railroad track. He recognized the man as Lloyd Thomas Dixon whom he had known for several years.

Dixon appeared to be holding an object under his shirt, causing it to bulge. Sergeant Kennedy walked to within fifteen or twenty feet of Dixon and called for him to halt. Dixon started to run and the officer called, "Stop, Lloyd." Dixon did not stop and the officer fired three warning shots. Dixon ran from the tracks to a brushy area along the river. The officer followed him a short distance, but was unable to overtake him in the muddy, brushy river bank area. Kennedy heard noises which indicated that the man he was pursuing was going back north along the river.

When daylight arrived, Kennedy went back to where the person he saw left the railroad track. Below the track, he found a black low oxford shoe and a fifth of "American Bourbon" whiskey. Tracks were made by a person wearing one shoe were visible in the mud and the officer followed them to where they crossed a log. The ground had been disturbed near the log and a few sheets of note paper, two keys on a ring and money were lying on the ground. A total of $7.19 in coins was found upon a search.

At around 7:30 that morning, an officer stationed at Dixon's residence saw Dixon's grandmother enter the house and carry out some clothing. The officer followed the woman to her residence. Policemen called to that location knocked at the door and when the grandmother answered, they asked whether Dixon was in the house. At first the grandmother said no, but then she or another woman said that he was sleeping in the bedroom. The officers entered the house and found Dixon lying over a bed, dressed in underwear shorts, sleeping. A pair of muddy trousers lay at the foot of the bed. No shoes were found in the room. Dixon was taken to jail barefooted.

Other than the police officers, who testified to the above matters, the only witness who testified for the state was Mr. Walter Fetsch, the owner of the liquor store. He went to the store while the police officers were there and observed the broken win-

dow. He went inside the store and found, according to his direct testimony, that "the change" was missing from the cash register. (Although it is not entirely clear from the transcript, the witness apparently referred to the coins in the register as "change.") He fixed the amount of "change" which had been taken from the register at $21.00. He also testified that two bottles of whiskey were missing from the shelves, one bottle of Jim Beam and one of American bourbon. Fetsch identified keys found near the log as keys which had been kept in the cash register at the store and which he had last seen there on June 16. The note paper found there was also identified by the witness as having been kept in the cash register at the store.

Several of appellant's points in this appeal are related to the court's ruling on his motion to strike the testimony of Fetsch that $21.00 and two bottles of whiskey were found by him to have been missing. The taking of these items was the basis of the stealing charge.

In his direct examination, Fetsch made some mention of what his "night man" did at the store, but it was only on cross-examination that Fetsch was shown to have left the store at 6:30 P.M. on the previous evening. Fetsch stated that the night man's closing time was eleven o'clock. Thus, Fetsch did not have direct personal knowledge of the situation on the premises at the time of closing. The essential question on this appeal is the sufficiency of his knowledge, in such circumstances, to give probative value to his assertions that $21.00 in "change" and two bottles of whiskey were missing from the store.

■ As to the money, on direct examination, Fetsch stated that "the change" in the register was missing. When asked the amount of the missing "change," he stated: "Well, I just can't remember. I think around $21.00." The fact that the witness used the term "think" would not render his testimony inadmissible (see Leathers v.

Sikeston Coca-Cola Bottling Company, Mo. App., 286 S.W.2d 393, 396 [2–4]), but its use assumes some significance here in the light of the witness's subsequent testimony. When asked how he computed the amount of money missing, he began several attempts to explain what the "night man" did, but the court sustained the defense objections to such testimony. Ultimately, the only colloquy to which no objection was made proceeded as follows:

"Q (By Mr. Dalton [prosecuting attorney]), But, at any rate, there was an amount of change missing in the sum of— A (interrupting) That's right.

"Q (continuing) —$21.00? A $21.00, yes."

Subsequently, and still on direct examination, the witness was asked whether or not he had a business practice which he directed "to be followed with reference to the amount of change or money that is left in your place of business on closing?" The witness replied in the affirmative and testified that the practice was to leave $65.00 in the store every night. That was the end of the direct testimony on the money.

On cross-examination, the witness was asked how he knew the amount of money in the cash register at closing time. The witness replied that the night man "puts it on a little piece of paper." When this answer was received, the defense counsel moved to strike the witness's testimony about the $21.00 in "change" on the grounds that it was hearsay. The court overruled the motion to strike, but directed the jury to disregard the particular answer about the night man's notation.

On redirect examination, the state apparently sought to qualify the notation as a record kept in the usual course of business and adduced from the witness that the record was kept that night and that the witness saw it where it was supposed to be when he came into the store during the early morning hours of the 17th. The witness was then asked what the record stated.

Objection to his answering on the best evidence grounds was sustained and no further evidence on this subject appears.

■ Other than the evidence pertaining to the $7.19 found near the log, the only evidence pertaining to money was a police officer's testimony, over objection, that he had been "told to go back and talk to Lloyd's grandmother about some money she supposedly had" and that he got "$12.55 worth of change" from Lloyd's grandmother. Inasmuch as there was no connecting evidence relating to this sum of money, such testimony had no probative value.

■ "* * * [N]ot every human assertion is to be accepted as the basis of an inference that the thing asserted is true. Wigmore on Evidence (3rd Ed.), Vol. II, Section 475, loc. cit. 516. And, it would seem to be elementary and self-evident that no witness should be heard with respect to that concerning which he does not possess the fundamental and basic testimonial qualification of knowledge; or, as succinctly stated many years ago, '(n)o one can be allowed to prove what he has never learned, whether it be ordinary or scientific facts.' Elliott v. Van Buren, 33 Mich. 49, 53. So, when the testimony of a witness, read as a whole, *conclusively* demonstrates that whatever he may have said with respect to the issue under investigation was a mere guess on his part and that, in fact, he did not know about that concerning which he undertook to speak, his testimony on such issue cannot be regarded as having any probative value." Barnhart v. Ripka, Mo.App., 297 S.W.2d 787, 791 [7].

■ Analysis of Fetsch's testimony compels the conclusion that his testimony that $21.00 in "change" was missing from the cash register was not based upon his direct knowledge, but must have been based upon the information conveyed to him by the memorandum which he observed in the cash register. He testified to no practice as to the amount of "change" left in the register, only that $65.00 was customarily left there. However, he testified that only $21.00 was missing, so the $65.00 usually left had no significance. His "I think" answer on the original question as to the amount of missing "change" tends to negative the existence of any standard practice as to the amount of "change" left. Fetsch's testimony that $21.00 "in change" was missing was not based upon the witness's actual knowledge nor upon a proper basis to permit him to so testify. The trial court should have sustained the motion to strike the witness's testimony on the subject. State v. Cain, Mo.Sup., 37 S.W.2d 416, 418 [5], [6, 7].

The testimony about the missing whiskey is on a similar footing. The witness's conclusion on this subject was based upon his observation that there were two empty spaces on the shelves on which the Beam and American bourbon were displayed. On direct examination, the witness testified that his business pratice required that the night man "fill the shelves and mark it down on a slip of paper what he puts on the shelves and sweep the floor and see that all the shelves are full before he leaves * *."

On cross-examination, Fetsch was asked whether he knew that the shelves had been filled on the night in question. He stated that he knew they were "(b)ecause my man told me." Again the defense objection that the witness's testimony on this subject was based on hearsay and that all of his testimony should be stricken was overruled. The court did strike the reply to the particular question.

■ The state suggests that the witness's testimony rests on two bases: His knowledge of the business practice and what the night man told him. Obviously, Fetsch could not base his testimony on what the night man told him. State v. Cain, 37 S.W. 2d 416; State v. Long, 336 Mo. 630, 80 S.W.2d 154, 159 [4].

■ Nor did the evidence of the so-called business practice provide a sufficient

foundation for the witness's conclusion. There was nothing to show how closely the practice was adhered to or whether the person on duty on the particular night knew of the practice. Thus circumstances here failed to demonstrate that the witness's claimed knowledge, except for what his night man told him, had "adequate data as its basis of inference." 2 Wigmore on Evidence (3rd Ed.) § 659, p. 770. See Perry v. Burton, 111 Ill. 138, 143.

The state suggests that the witness's testimony about the business practice afforded a basis for the presumption that a state of facts once shown to exist is presumed to exist until the contrary is shown. See Martin v. Sloan, Mo.Sup., 377 S.W.2d 252, 256 [2]. However, the problem here is establishing the pre-existing state of facts. Had the night man testified that when he closed the store, the shelves had been filled, the condition would be presumed to have continued until the breaking and have afforded an inference that an absence of bottles from the shelves was related to the breaking. Here, however, what is attempted to be shown is the previously existing condition, and the evidence failed properly to do so.

In view of the demonstration of the witness's lack of knowledge of these matters, the trial court should have sustained appellant's motion to strike his testimony. Although such testimony related primarily to the stealing charge, it also bore upon the element of entering under the burglary charge and we cannot say that the verdict on both charges was not influenced by the testimony. Therefore, the conviction on both charges must be reversed.

We cannot agree with appellant's contention that, in no event, was the chain of circumstances of the appellant's guilt sufficient to sustain a verdict against him. We will not, in view of the necessity for a new trial in which the evidence might not be precisely the same, detail here the matters which lead to our conclusion in this regard. We cannot conclude that it would be impossible for the state to make a submissible case upon a new trial and, therefore, will remand the matter for a new trial. State v. Missey, 361 Mo. 393, 234 S.W.2d 777; State v. Watson, Mo.Sup., 350 S.W.2d 763.

Reversed and remanded.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.