STATE of Missouri, Respondent,

v.

Eria DOSS, Appellant.

No. WD 73937.

Missouri Court of Appeals, Western District.

March 26, 2013.

Chris Koster, Attorney General, Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for Respondent.

Margaret M. Johnston, Assistant Public Defender, Columbia, MO, for Appellant.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, and THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges.

KAREN KING MITCHELL, Presiding Judge.

Eria Doss was convicted, following a jury trial, of two counts of second-degree (felony) murder, section 565.021.1(2);[1] two counts of first-degree robbery, section 569.020.1; and four counts of armed criminal action, section 571.015, for which Doss was sentenced to an aggregate total sentence of two consecutive life terms. On appeal, Doss argues that the evidence was insufficient to support one count of first-degree robbery and challenges the admission of certain juvenile records at the penalty phase of his trial. We reverse in part and remand in part for resentencing.

## Factual Background [2]

On April 18, 2009, Neighbor was at his home in Kansas City, Missouri. Sometime before 2:00 p.m., Neighbor let his dog outside but remained on the porch himself and noticed three men approach the apartment next door. He recognized one of the men as Larry Marshall,[3] who lived up the street from him, but he was unfamiliar with the other two men. He saw Marshall knock on the front door; Marshall then left and walked back towards his own house, while the other two men went inside the residence. Shortly thereafter, Neighbor heard two gunshots and then saw the other two men run out of the house. It appeared to Neighbor that one of the men was carrying some sort of gaming system because Neighbor saw cords dangling from the man's hands. Neighbor went back inside his home and called the police.

Kansas City police officer, Candace Tucker, responded to Neighbor's call. When she and her partner arrived at the scene, they entered the residence from which the men fled. Inside, they heard music and a gasping, bubbling sound. In one room, they saw two victims lying on the floor with apparent gunshot wounds to the head. Both victims were lying facedown in pools of blood. One victim (later determined to be Andrew Eli) was pronounced dead at the scene, and the other (later determined to be Justin Budreau) was taken away by ambulance, but he did not survive his injuries. One bedroom in the apartment appeared to have been ransacked; the mattress had been pulled off the bed springs, dresser drawers had been pulled out with their contents scattered about, and the closet door was open with its contents also strewn about. Officer Tucker contacted the homicide unit and then went next door to speak with Neighbor.

Inside the home, crime scene investigators located miscellaneous paperwork, in the name of Andrew Eli, for a laptop computer. Investigators were unable to locate any identification, cell phones, or wallets at the scene. They did find two shell casings that were later determined to have been fired from the same gun.

Detective Robert Blehm was assigned to the case. Because there was no identification found at the scene, he was initially unable to identify the victims. Detective

---

1. All statutory references are to RSMo 2000, as updated through the 2008 Cum.Supp., unless otherwise noted.

2. We view the evidence in the light most favorable to the verdict. *State v. Winfrey*, 337 S.W.3d 1, 3 (Mo. banc 2011).

3. Although Neighbor did not know Marshall's name at the time, he learned it later through the course of the case.

Blehm later discovered that the apartment was rented by Andrew Eli and Jarod Mejia and that the victims were Eli and Justin Budreau.

After speaking with Neighbor, Detective Blehm arrested Marshall. And after speaking with Marshall, Detective Blehm put out pick-up orders on Michael Gunn and Doss.[4] Doss was picked up later that day, and, after being advised of his *Miranda* warnings, he agreed to speak with Detective Blehm.

Doss indicated that he had been hanging out with Marshall and Gunn around noon on April 18, 2009. At some point, Marshall suggested that they go to Eli and Mejia's apartment to rob them because he knew they had "smoke," but no weapons. Gunn took a loaded chrome and black gun with him, but Doss said that the plan was never to kill the victims; they were just supposed to scare them. The plan was originally for Marshall to knock on the door and suggest to the victims that they go smoke, but when no one answered, the three men just walked inside. Once inside, they realized that Eli and Budreau were asleep, so Marshall left, but Gunn and Doss stayed. Gunn then roused the victims by yelling, "Hey, man, wake up."

After the victims woke, Gunn pointed the weapon at them and yelled for them to lie down on the floor and not look at his face. Doss began searching one of the bedrooms, specifically under the bed, in the dresser drawers, and in the closet. He found "[s]ome weed; some dope. Some endo." Gunn then told him, "hurry up cuz." At that point, Doss came out of the bedroom, and saw the two victims lying quietly on the floor. Doss then heard two shots, and he was close enough that the shots caused his ears to ring.

Doss and Gunn then ran down the stairs, heading for the door. Gunn had trouble opening the door, so he handed Doss a laptop computer that he had found in the main room to free up his hands. Gunn was then able to open the door, and the two fled the apartment, running to a car, driven by Marshall's cousin, that was waiting for them at the end of the street. Marshall's cousin took the men to the Landing to try to sell the laptop, but they were unsuccessful. They then went to a gas station where Gunn dumped several items in the trash. After purchasing some cigarettes, lighters, and "blunt shells," the men went to Seven Oaks Park, where Doss's family was having a barbecue, to again try to sell the laptop. They eventually sold it to a woman named Danielle for $150.00. The men stayed at the barbecue, drinking, smoking, and shooting dice. Later that evening, they went cruising around town.

Although he admitted seeing Gunn with a red and white phone that Gunn "found," Doss denied ever finding or taking any wallets or cell phones during the robbery, and he denied seeing Gunn take any either.

After obtaining Doss's statement, Detective Blehm located Danielle and recovered the laptop. It matched the receipt that had been recovered from Eli and Mejia's apartment, and when the computer was opened, it displayed Eli's name.

An autopsy revealed that Budreau suffered a fatal gunshot wound to the head that entered the top of his head, traveled through his brain, and exited out the left side of his neck. This wound was consistent with a person lying face-down on the floor. Eli also suffered a fatal gunshot wound to the head that entered the back of his head, but the bullet became lodged in

4. At the time, Doss was only seventeen years old.

the side of his left eye. In addition to the gunshot wound, Eli had stippling on the back of his left hand, indicating that burned gunpowder had come in contact with his skin. The stippling and the wound together were consistent with Eli having been face-down on the ground with his hands behind his head at the time he was shot. The medical examiner determined homicide to be the manner of death for both victims.

Doss was subsequently charged as an accomplice with two counts of first-degree murder for the deaths of Eli and Budreau, two counts of accompanying armed criminal action, one count of first-degree robbery for forcibly stealing a computer from Eli, with an associated armed criminal action count, and one count of first-degree robbery for forcibly stealing a cell phone and/or wallet from Budreau, with an associated armed criminal action count.

Before trial, Doss withdrew a previous waiver of jury sentencing. Doss acknowledged that the State would likely present evidence of his "juvenile problems" during a penalty phase, but nonetheless indicated his desire to proceed with jury sentencing. Doss acknowledged that his counsel had advised him that his juvenile record "would come into evidence," and he "agreed to that."

During both opening statement and closing argument, Doss's counsel encouraged the jury to acquit Doss of the first-degree murder charges, arguing that, instead, Doss was guilty of only first-degree robbery and second-degree murder. The jury, apparently agreeing with Doss's theory, found him guilty of two counts of second-degree (felony) murder, two counts of first-degree robbery, and four counts of armed criminal action.

Before the penalty phase began, the State indicated its intent to introduce State's Exhibit 66 (a third amended petition from case number 16JV05–01195, a juvenile case involving Doss), which alleged that Doss engaged in actions that would have constituted second-degree burglary, misdemeanor stealing, and misdemeanor possession of a controlled substance, if committed by an adult. The State also indicated its intent to introduce State's Exhibit 65 (a motion to modify a prior disposition on case number 16JV05–01195), containing allegations that, since the prior disposition, Doss had accumulated forty incident reports, which included violations for assault, failure to comply, threatening peers and staff, inappropriate language, disruptive behavior, and disrespect for staff. The motion further indicated that Doss had been placed on a Behavioral Risk and Management Plan that included "special behavioral contracts, individual counseling[,] and anger management classes." The motion to modify sought a placement review to determine a more appropriate placement than Hilltop Juvenile Detention Center, where he was then incarcerated, because he was continuing to struggle despite all the services he had been provided.

Doss objected to the exhibits, arguing that they were prejudicial and inflammatory, that there was no order finding Doss "guilty" of the conduct alleged in the juvenile petition, and that the juvenile records should be closed. The State presented an order from the family court releasing the records to the State to be used in the prosecution of *State of Missouri v. Eria Doss*, 394 S.W.3d 486 (Mo.App. W.D.2013). Doss argued that the order merely released the records to the State but did not make them admissible. The court overruled the objections.

After presenting the exhibits and other penalty-phase evidence to the jury, the State argued extensively that Doss

should not be given a break due to his young age, given his extensive juvenile history. During deliberations, the only evidence the jury requested was State's Exhibits 65 and 66 (the third amended petition and motion to modify disposition in juvenile case 16JV05–001195). The jury then recommended life imprisonment on each second-degree murder and first-degree robbery conviction, and fifty years' imprisonment on each armed criminal action conviction.[5]

The court later sentenced Doss in accordance with the jury's recommendation, ordering the sentences from all counts involving Eli to run concurrently and the sentences from all counts involving Budreau to run concurrently, but ordering the sentences involving Eli to run consecutively with the sentences involving Budreau. Doss appeals.

## Standard of Review

"When this court reviews a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, giving the State the benefit of all reasonable inferences." *State v. Thomas*, 387 S.W.3d 432, 436 (Mo.App. W.D.2013). "Our review is limited to determining whether there is sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt." *Id.* "We accept as true all evidence favorable to the State and disregard all evidence to the contrary." *Id.* "In conducting our review, we are mindful that '[t]he appellate court must not act as a "super juror" exercising veto power, but,

rather, must give great deference to the trier of fact.'" *State v. Hatfield*, 351 S.W.3d 774, 776 (Mo.App. W.D.2011) (quoting *State v. Donahue*, 280 S.W.3d 700, 701 (Mo.App. W.D.2009)). "While we give substantial deference to the jury's assessment of the evidence presented at trial, we 'may not supply missing evidence or give the [State] the benefit of unreasonable, speculative or forced inferences.'" *Id.* (quoting *State v. Olten*, 326 S.W.3d 137, 139 (Mo. App. W.D.2010)).

We review the trial court's decision to admit evidence for an abuse of discretion. *State v. Stover*, 388 S.W.3d 138, 156–57 (Mo. banc 2012). "The trial court abuses its discretion when the trial court's decision is clearly against the logic of the circumstances, indicates a lack of deliberation, and is so arbitrary and unreasonable as to shock our sense of justice." *State v. Harris*, 364 S.W.3d 790, 795 (Mo.App. W.D.2012). Even if we find an abuse of discretion, the court's decision will not be reversed unless there is also prejudice to the defendant resulting from the court's error. *Stover*, 388 S.W.3d at 156–57.

## Analysis

Doss raises two claims of error on appeal.[6] He claims that the evidence was insufficient to support his conviction of first-degree robbery of Budreau in that there was no evidence that either Doss or Gunn took any cell phones or wallets from Budreau. He also claims that the court erred during his penalty phase in allowing the State to introduce, over his objection, State's Exhibits 65 and 66, which consisted

---

5. Pursuant to the prosecutor's request, the jury also recommended that all sentences be run consecutively. The trial court recognized, however, that the decision as to whether the sentences would be run concurrently or consecutively was a matter entirely within the discretion of the trial court and not the jury. We suggest that the State avoid directing the jury to such improper considerations in future cases.

6. Although Doss actually asserts three points relied on, the first two both relate to the admission of the same evidence; thus, we will treat them as a single claim of error.

of juvenile records, in that the records failed to demonstrate by a preponderance of the evidence that Doss committed the acts alleged in the documents and the records should have been kept confidential. We agree with both claims; thus, we reverse Doss's convictions for first-degree robbery and its associated count of armed criminal action as they relate to Budreau, and we remand the case back to the trial court for a new penalty phase on the remaining convictions due to the erroneous admission of evidence.

## I. The evidence was insufficient to support Doss's conviction of first-degree robbery of Budreau.

■ In the charging document, the State alleged that Doss committed first-degree robbery by forcibly stealing "a computer, cell phones and wallets in the possession of Justin Budreau." In the verdict director, the jury was instructed to find Doss guilty of first-degree robbery if it found, among other facts, that he acted in a specified manner, and if it believed beyond a reasonable doubt that "the defendant or Michael Gunn took a cell phone and/or wallet in the possession of Justin Budreau." [7]

■ Because the State chose to submit a disjunctive verdict director, allowing the jurors to convict Doss if they found that he (or Gunn) "took a cell phone *and/or* wallet," the State then had to present sufficient evidence to support each alternative. (Emphasis added.) "A disjunctive submission of alternative means by which a single crime is committed is proper [only] if both alternatives are supported by sufficient ev-

idence and the alternative means are in the same 'conceptual grouping.'" *State v. Fitzpatrick*, 193 S.W.3d 280, 292 (Mo.App. W.D.2006) (quoting *State v. Brigham*, 709 S.W.2d 917, 922 (Mo.App. S.D.1986)). In other words, the State's evidence had to demonstrate that, as between Gunn and Doss, both a cell phone and a wallet were taken from the apartment.

■ The evidence presented at trial pertaining to cell phones and wallets consisted of law enforcement testimony that none were located at the scene, which was unusual, and Doss's statement that, while he saw Gunn with a red and white cell phone that Gunn "found," he never saw Gunn take any wallets from the scene, and Doss, himself, did not take any cell phones or wallets during the robbery.[8]

Doss argues that this evidence was insufficient to support the first-degree robbery conviction insofar as: (1) Doss did not explain where or when Gunn "found" the red and white cell phone; (2) there was no evidence that either of the victims owned a red and white cell phone; (3) there was no evidence that Budreau owned either a cell phone or a wallet; (4) there was no evidence that, even if Budreau owned these items, he had them with him that day; and (5) there was no evidence that any cell phones or wallets were taken during the robbery.

Regarding the cell phone, the State counters that Doss's statement that Gunn found and kept a red and white cell phone, coupled with the evidence that no cell phones were located at the scene, which

---

7. In the verdict director for first-degree robbery against Eli, the jury was instructed to find Doss guilty if it found and believed beyond a reasonable doubt that "the defendant or Michael Gunn took a computer, which was property in the possession of Andrew Eli."

8. Doss did, however, admit that Gunn had taken a laptop computer and that Doss had taken marijuana. "[U]nder Missouri law, illegal drugs can be 'forcibly stolen' to uphold a robbery conviction." *State v. Jordan*, No. ED97597, —— S.W.3d ——, 2012 WL 4788357, at *6 (Mo.App. E.D. Oct. 9, 2012).

was unusual, rendered the evidence sufficient for a rational juror to conclude beyond a reasonable doubt that either Doss or Gunn took a cell phone in possession of Budreau during the robbery. The State argues that it was reasonable to infer that Gunn "found" the cell phone during the robbery insofar as Doss made the statement to Detective Blehm in the context of a discussion about the robbery and what items were acquired during the robbery.

Even if we accept the State's argument as to the sufficiency of the evidence to support Doss's conviction based upon the cell phone, we still must find that sufficient evidence existed to support the assertion that either Doss or Gunn took a wallet from the apartment, as well, given that the State chose to submit the verdict director in the disjunctive. And, here, we agree with Doss that the State failed to present sufficient evidence that any wallets were taken during the robbery.

Regarding the sufficiency of the evidence to support a finding that either Doss or Gunn took a wallet, the crux of the State's argument is that "[i]t is reasonable to infer that young men in their early twenties would be in possession of an item as ubiquitous as a wallet." And, since none were found at the scene, the State argues that the only reasonable inference is that either Doss or Gunn took wallets belonging to Eli and Budreau. While we find the State's argument logical, that, alone, is not the standard by which we judge the sufficiency of the evidence. Even though it is logical to assume that the men owned wallets, there was no evidence indicating that they had wallets with them that day, or even that they customarily carried the wallets with them. Although one might suspect that Eli had one either on him or in the apartment, given that he lived there, Budreau was not a resident of the apartment, and he very well could have left a wallet, if he had one, in his car outside the apartment or elsewhere. Absent some evidence that wallets were present and available to be stolen that day, there simply was not enough evidence to support Doss's conviction.

In *State v. Dixon*, 420 S.W.2d 267, 269–70 (Mo.1967), the defendant was charged with second-degree burglary and stealing, based upon an allegation that he broke into a liquor store and took $21.00 in change along with two bottles of whiskey. The State's only evidence identifying the stolen property was that of the store owner, who had not been present at the time the store closed, and thus could not definitively state that the items allegedly taken had, in fact, been present before the break-in. *Id.* at 270. The basis for his assertions as to the missing property was the standard business practice that his night-shift employee was to have followed (i.e. filling the cash drawer and stocking the shelves), coupled with his assumption that the night-shift employee did, in fact, follow the standard practices. *Id.* at 270–71.

On appeal, the defendant argued that the owner's testimony was improperly admitted because he lacked personal knowledge, and, therefore, it was not probative evidence of any property taken. *Id.* at 270. The Missouri Supreme Court agreed. *Id.* at 271–72. The Court held that, " 'when the testimony of a witness, read as a whole, conclusively demonstrates that whatever he may have said with respect to the issue under investigation was a mere guess on his part and that, in fact, he did not know about that concerning which he undertook to speak, his testimony on such issue cannot be regarded as having any probative value.' " *Id.* at 271 (quoting *Barnhart v. Ripka*, 297 S.W.2d 787, 791 (Mo.App.1956)). In rejecting the State's argument that the owner's conclusions

were properly based upon his business practices, the Court noted that "[t]here was nothing to show how closely the practice was adhered to or whether the person on duty on the particular night knew of the practice." *Id.* at 271–72. The Court concluded that the "circumstances ... failed to demonstrate that the [owner's] claimed knowledge ... had 'adequate data as its basis of inference.' " *Id.* at 272 (quoting 2 Wigmore on Evidence (3d ed.) § 659, p. 770).

Here, the only basis for believing that either Eli or Budreau had a wallet to be stolen was Detective Blehm's testimony that it was unusual *not* to find any wallets or cell phones, coupled with the State's argument that it was reasonable to infer that all men in their twenties carry wallets. But there is no evidence that Detective Blehm had any personal knowledge that either victim customarily carried a wallet, and the inference upon which the State relies simply has no basis in the evidence. At best, all that exists is a suspicion that there were wallets present for Doss and Gunn to take. Yet, even if that suspicion could be properly characterized as a strong one, a mere suspicion, alone, is insufficient. *See State v. Goff,* 493 S.W.2d 657, 658 (Mo.App.1973) (holding that mere suspicion that certain property was stolen—even if it is a strong suspicion—is not enough to prove that the property was actually stolen).

■ We must note that it is understandable that the jury convicted Doss, despite the evidentiary void, because Doss's counsel directed the jury to do so. Doss's entire defense theory was that, while he intentionally participated in a robbery, he had no idea that Gunn would murder the victims; thus, counsel argued, while Doss was guilty of first-degree robbery and second-degree (felony) murder, he lacked the requisite deliberation to be guilty of first-degree murder. Counsel's admissions, however, cannot fill in for the missing evidence in this case. It is plain that a first-degree robbery occurred; Doss admitted forcibly taking a laptop computer and marijuana from the apartment. It is also plain that two deaths occurred as a result of the perpetration of that robbery. But what is not plain is that both a cell phone and wallet were taken during the robbery. Counsel's admission never specified the basis for the first-degree robbery—only that one occurred. And because there is no evidence, and only one speculative inference, to support a finding that a wallet was taken during the robbery, the two counts of Doss's conviction that he challenges on appeal, his conviction for the count of first-degree robbery against Budreau, along with the conviction for the corresponding count of armed criminal action, must be reversed.[9]

Doss's third point on appeal is granted.

## II. The trial court erred in admitting State's Exhibits 65 and 66 into evidence during Doss's penalty phase.

■ During the penalty phase of Doss's trial, outside the presence of the jury, the State indicated its intent to offer State's Exhibits 65 and 66 into evidence. Both exhibits contained juvenile records related to Doss. State's Exhibit 66 was a third amended petition in case number 16JV05–01195, containing allegations that Doss engaged in conduct that, if committed by an adult, would constitute the felony of second-degree burglary and the misdemean-

---

9. Doss cannot be retried on these counts because " '[t]he double jeopardy clause precludes remand for a second trial when a conviction is reversed because the evidence introduced at the first trial was legally insufficient.' " *State v. Miller,* 372 S.W.3d 455, 468 (Mo. banc 2012) (quoting *State v. Self,* 155 S.W.3d 756, 764 (Mo. banc 2005)).

ors of stealing and possession of a controlled substance. The petition further alleged that Doss failed to appear for a scheduled court hearing and had incurred forty-nine home detention violations in one month.

State's Exhibit 65 was a motion to modify a prior disposition on case number 16JV05–01195 and contained allegations that, since the prior disposition, Doss had accumulated forty incident reports, which included violations for assault, failure to comply, threatening peers and staff, inappropriate language, disruptive behavior, and disrespect for staff. The motion further indicated that Doss had been placed on a Behavioral Risk and Management Plan that included "special behavioral contracts, individual counseling[,] and anger management classes." The motion to modify sought a placement review to determine a more appropriate placement than Hilltop Juvenile Detention Center, where Doss was then incarcerated, because he was continuing to struggle despite all the services he had been provided.

Doss objected to the exhibits, arguing that they were prejudicial and inflammatory, that there was no order finding Doss "guilty" of the conduct alleged in the petition, and that the juvenile records should be closed. The State presented an order from the family court releasing the records to the State to be used in the prosecution of *State of Missouri v. Eria Doss*. Doss argued that the order merely released the records to the State but did not make them admissible. The court overruled the ₐobjections. Doss argues that the court erred in doing so. We agree.

Doss advances the following arguments to support his claim that the exhibits were inadmissible. First, he argues that the State failed to prove by a preponderance of the evidence that Doss committed the acts alleged within the exhibits. Second, he argues that, pursuant to statute, the records should have been kept confidential. For ease of discussion, we address these arguments in reverse order.

Doss argues that, pursuant to section 211.271.3, his juvenile records were not admissible in the penalty phase of his trial. Section 211.271.3 provides:

> After a child is taken into custody as provided in section 211.131, all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in cases under this chapter, as well as *all reports and records of the juvenile court, are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter.*

(Emphasis added.)

The State counters, relying on this Court's recent opinion in *State v. Sapien*, 337 S.W.3d 72 (Mo.App. W.D.2011), that admission was authorized pursuant to section 211.321.2(2), RSMo Cum.Supp.2010.[10] Section 211.321.2(2) provides:

> In all proceedings under subdivision (3) of subsection 1 of section 211.031 the records of the juvenile court as well as all information obtained and social records prepared in the discharge of official duty for the court shall be kept confidential and may be open to inspection without court order only as follows:
>
> . . . .

---

**10.** The State asserts that Doss's argument is not properly preserved for review, as Doss failed to direct the court to section 211.271.3 in his objection to the exhibits. Because we find that the exhibits were inadmissible for a separate reason, we need not determine whether Doss preserved this particular argument.

(2) After a child has been adjudicated delinquent pursuant to subdivision (3) of subsection 1 of section 211.031, *for an offense which would be a felony if committed by an adult,* the records of the dispositional hearing and proceedings related thereto shall be open to the public to the same extent that records of criminal proceedings are open to the public.

(Emphasis added.)

In *Sapien,* the defendant argued that, pursuant to section 211.271.3, the trial court erred in admitting his juvenile records during the penalty phase of his trial.[11] *Sapien,* 337 S.W.3d at 77. In addressing Sapien's claim, this Court looked to section 211.321.2(2) and determined that, to the extent the two statutes conflicted, section 211.321.2(2) controlled because it was both more specific and more recent than section 211.271.3. *Id.* at 78. The juvenile records at issue in *Sapien* demonstrated that Sapien had been adjudicated pursuant to section 211.031.1(3) for an offense that, if committed by an adult, would constitute the felony of rape. *Id.* Thus, we concluded that section 211.321.2(2) applied and allowed admission of the records into evidence during Sapien's penalty phase. *Id.*

Because section 211.321.2(2) allows certain juvenile records to "be open to the public to the same extent that records of criminal proceedings are open to the public," we must determine whether the records at issue here (State's Exhibits 65 and 66), if they had been records of ordinary criminal proceedings, would otherwise have been admissible at Doss's penalty phase.

▮▮ During a penalty-phase proceeding, "[e]vidence supporting or mitigating punishment may be presented."

§ 557.036.3. "Such evidence may include, within the discretion of the court, evidence concerning the impact of the crime upon the victim, the victim's family and others, the nature and circumstances of the offense, and the history and character of the defendant." *Id.* "As a general rule, the trial court has discretion during the punishment phase of trial to admit whatever evidence it believes may be helpful to the jury in assessing punishment." *State v. Fassero,* 256 S.W.3d 109, 118–19 (Mo. banc 2008). Although evidence pertaining to criminal conduct of the defendant not resulting in conviction is relevant to the defendant's history and character, such evidence is admissible in a penalty phase only if the State proves, by a preponderance of the evidence, that the defendant engaged in the conduct alleged. *Id.* at 119 (holding that a defendant's indictment of a criminal act, alone, was not admissible as "history and character" evidence because the indictment, itself, did not prove by a preponderance of the evidence that the defendant engaged in the conduct alleged).

Doss argues that the juvenile records at issue made only allegations of criminal conduct, and by themselves, they did not demonstrate by a preponderance of the evidence that Doss engaged in the acts alleged. The State argues that, although State's Exhibit 66 was merely a petition, State's Exhibit 65 was a motion to modify a prior disposition on that petition, and, because the prior disposition included commitment of Doss to Hilltop Juvenile Detention Center, the two exhibits combined established by a preponderance of the evidence that Doss engaged in the conduct alleged in the petition (State's Exhibit 66).

While we agree with the State that the two exhibits need not be viewed in isolation, and that State's Exhibit 65 demon-

11. In the opinion, this Court noted that Sapien raised no further challenge to the juvenile records beyond the claimed statutory prohibition. *Sapien,* 337 S.W.3d at 77 n. 2.

strates by a preponderance of the evidence that Doss engaged in *at least some* of the conduct alleged in State's Exhibit 66, the problem is that there are criminal acts alleged in the motion to modify (State's Exhibit 65) for which there is no evidentiary support demonstrating that Doss engaged in the conduct alleged, and the fact that Doss was adjudicated on the third amended petition in State's Exhibit 66 does not demonstrate which, if not all, of the acts the court found Doss to have committed. Thus, it is possible that the court found Doss to have engaged in only the misdemeanor-equivalent acts, and, if that were true, then the records would not come within the confidentiality exception of section 211.321.2(2), as it applies to felony-equivalent acts only.

■ In sum, State's Exhibits 65 and 66, without any further explanatory and supporting evidence, were not admissible in Doss's penalty-phase proceeding. But we will not reverse error in the admission of evidence unless the defendant can also demonstrate resulting prejudice from the erroneously admitted evidence. *Fassero*, 256 S.W.3d at 119. Here, we believe Doss has met that burden.

Doss's penalty-phase defense was primarily that Doss was only seventeen at the time of the crime, and that, like most seventeen-year-old boys, he simply made some bad decisions. Doss's counsel argued that Doss's age mitigated punishment. The State countered by arguing

that Doss was not just a young man falling victim to poor decision making. The State based its argument on the fact that Doss had a lengthy juvenile history and appeared resistant to changing his anti-social behavior; in other words, youth—while potentially mitigating for some—was not a mitigating factor for Doss. During deliberations, the only exhibits the jury asked to view were State's Exhibits 65 and 66. The jury then recommended punishment of life imprisonment on each murder and robbery count and fifty years' imprisonment on each armed criminal action count. And pursuant to improper argument by the State, the jury further recommended that all sentences run consecutively, which would have resulted in a total sentence of four terms of life imprisonment plus an additional two-hundred years' imprisonment. The jury rejected the State's argument for first-degree murder and apparently adopted Doss's theory that he was not the shooter and never intended to kill the victims. Yet the jury recommended a very harsh sentence. Thus, we cannot say that Doss was not prejudiced by the erroneous admission of his juvenile records. Consequently, we vacate Doss's sentences and remand for a new penalty phase.[12]

Doss's first point on appeal is granted. Given this resolution, we need not reach Doss's second point.

## Conclusion

Because the evidence was insufficient to support Doss's conviction of one count of

---

**12.** On remand, if the State is able, the State may present evidence demonstrating that Doss committed the acts forming the basis for the second-degree burglary allegation in State's Exhibit 66. That being said, however, we do not believe that—even with evidentiary support—the State would be allowed to present evidence of Doss's misdemeanor-equivalent acts, as the confidentiality exception of section 211.321.2(2) speaks only to felony-equivalent acts. The same is true of State's Exhibit 65; within it are al-

legations of assault, but they are not further defined as either misdemeanor- or felony-equivalent assaults. Depending upon the nature of the alleged assaults, the State may be able to present evidence demonstrating by a preponderance of the evidence that Doss engaged in conduct constituting felony-equivalent assaults. Should the State offer sufficient evidentiary support for the felony-equivalent allegations, the court must ensure that no misdemeanor-equivalent allegations or conduct go before the jury.

first-degree robbery related to victim Budreau, and because one of the armed criminal action counts was based upon his conviction on that count of first-degree robbery, we grant Doss's third point on appeal and reverse his conviction for the count of first-degree robbery related to victim Budreau and the corresponding armed criminal action count.

Due to the erroneous admission of evidence at the penalty phase, we grant Doss's first point on appeal, vacate Doss's sentences, and remand for a new penalty phase on the remaining counts.

THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges, concur.