

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD76357 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | July 15, 2014 |
| DIAMOND D. BLAIR, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable David M. Byrn, Judge**

**Before Division III:** Thomas H. Newton, Presiding Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

Diamond D. Blair ("Blair") appeals the judgment of the Circuit Court of Jackson County, Missouri ("trial court"), finding him guilty, after a jury trial, of one count of second-degree felony murder, one count of first-degree robbery, and two counts of armed criminal action. On appeal, Blair contends that the trial court erred in overruling Blair's motion for judgment of acquittal and further erred in the admission of certain evidence. We reverse Blair's convictions for first-degree robbery and the associated count of armed criminal action. We affirm Blair's convictions for second-degree felony murder and the associated count of armed criminal action.

# Factual and Procedural Background[1]

On the evening of June 23, 2009, Blair and his friend, Paul McDaniel ("McDaniel") planned to rob a gas station. The men wanted first to steal a car to use during the robbery, because Blair did not want to use his own car. At some point in the evening the two men were joined by a third friend, Elbert Holly ("Holly"), and all three were dropped off by an acquaintance in the area of 36th Street and Baltimore in Kansas City. It had started raining, so the men sought shelter in the vestibule of a nearby apartment building. After the rain subsided, the men tried to find a screwdriver to use to steal a car. Holly called his girlfriend to see whether she had a screwdriver, and they later approached a man on a bicycle to see whether he knew where they could find one. They were ultimately unsuccessful, and they had planned to leave the area, when Montague Ashline ("Victim") pulled up to the same apartment building where the men had been seeking shelter from the rain.

While Victim was inside the apartment building, Blair, McDaniel, and Holly hid in nearby doorways. Victim exited the apartment building several minutes later, and the three men approached Victim, grabbed him by his shirt, pointed a gun at his chest, and demanded the contents of his pockets. Victim answered that he had nothing, and a struggle ensued. Blair shot Victim in his chest at close range, and the bullet went through Victim and into McDaniel's arm. At this point, the three attackers ran, and Victim died from his gunshot wound.

Blair and his companions ran to the nearby home of Holly's girlfriend. Holly called her on the way to let her know they were coming. McDaniel testified that he thought this was unusual, because McDaniel did not recall Holly having a cell phone earlier in the evening.

---

[1] We review all facts in the light most favorable to the jury's verdict. *State v. Winfrey*, 337 S.W.3d 1, 3 (Mo. banc 2011).

Eventually the men went on their way, and McDaniel called a friend to take him to the hospital to have his gunshot wound treated.

When police responded to a shots-fired call shortly after midnight on June 24, 2009, they found Victim's body in the street adjacent to the apartment building where the confrontation had taken place. Victim died of a gunshot wound to the chest. Police collected cigarette butts, which were lying on the ground next to Victim's body, and also collected fingerprints from the vestibule of the apartment building. They contacted the manager of the apartment building, who gave them the video footage from the building's security camera. The police could not identify the attackers from the video footage, but they could tell that there were three men and that they had been in the vestibule of the apartment building. Police could also tell from the video footage that one of the three attackers appeared to have been shot himself.

The police contacted area hospitals to see who had sought treatment for a gunshot wound the night of the homicide. They learned that McDaniel had been treated for a gunshot wound approximately two hours after Victim had been killed. They interviewed McDaniel but did not obtain any useful information at that time. Later, police learned that the fingerprints they collected from the vestibule of the apartment building and the DNA from the cigarette butts they found in the street came from McDaniel.

On July 5, 2009, police stopped a truck matching the description of one seen at an unrelated homicide. Blair was a passenger in the truck from which a black .38 revolver was recovered.

In September of 2009, when police re-interviewed McDaniel about Victim's death, he told police about the shooting and identified Blair as the shooter. He told the police that they

3

already had the murder weapon in their custody.  Blair was eventually arrested for robbing and murdering Victim.

At Blair's trial, McDaniel testified to the facts as recounted above.  In addition, the jury saw the security video footage.  Evidence was also presented that the fingerprints and DNA collected from the scene were McDaniel's, and that the gun seized from the truck in which Blair was a passenger on July 5, 2009, was the murder weapon.

The State played audio recordings for the jury of telephone conversations Blair had while incarcerated.  In one such conversation, which took place on July 17, 2009, Blair tells an unidentified man that he was stopped in another person's truck.  Blair stated that he had "wiped the revolver off" and put it under the seat, stating, "if they find this, it's his car."  Other conversations had Blair speaking with other unidentified people and complaining about people "pillow talking."  During these conversations, Holly and McDaniel are mentioned.  In one conversation, recorded on July 27, 2009, an unidentified woman reports that McDaniel had asked her if she wanted to know how he "really got shot."  The woman continues, stating that McDaniel told her, "that n***er shot me, too.  I think the n***er panicked when him and the dude was arguing and I think that n***er panicked and that's what happened because he thought the n***er . . . ."  Blair then states, "and the s**t she was describing . . . is exactly how it happened.  And I said, 'Damn.'  I said 'Damn, I'm thinking [Holly] is the n***er out there running loose.'  She said, 'Naw baby, I heard that from [McDaniel].'"  The conversation goes on to say that McDaniel was "out here telling all [Blair's] business."  A final conversation, recorded on August 10, 2009, has Blair stating:

> You know, that girl told me that.  That's the n***er spreading my business in the street about that.  So he's the only n***er I have to worry about if they ever try to charge me with something like that, he's coming in court to test . . . to tell on me.  But the deal is about that, they don't, I mean they probably do know about the

4

pussy because he had to go to the hospital. So they do question the n***er, that would be the only way.

The jury found Blair guilty of all four counts. On April 12, 2013, Blair was sentenced to life imprisonment on the felony murder charge, life imprisonment on the robbery charge, and fifty years imprisonment on each of the counts of armed criminal action. All sentences were to run consecutively to each other and consecutively to another sentence previously imposed in federal court. On April 22, 2013, an amended judgment was issued specifying that the sentences imposed were to be served concurrently to sentences previously imposed in three other cases. This appeal follows.

## Standard of Review

When an appellant challenges the sufficiency of the evidence to support his convictions, we review that evidence in the light most favorable to the verdict, giving the State the benefit of all reasonable inferences. *State v. Thompson*, 314 S.W.3d 407, 410 (Mo. App. W.D. 2010). We do not reweigh the evidence, but determine only whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* "We accept as true all evidence favorable to the State . . . and disregard all evidence . . . to the contrary." *Id.* However, "[w]e may not supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences." *State v. Taylor*, 407 S.W.3d 153, 159 (Mo. App. E.D. 2013).

We review the trial court's admission of evidence for abuse of discretion if the objection is properly preserved. *State v. Wahby*, 775 S.W.2d 147, 153 (Mo. banc 1989). If there was not adequate objection to the admission of the evidence at trial, however, our review, if any, is for plain error only. *State v. McFadden*, 369 S.W.3d 727, 753 (Mo. banc 2012). While all errors asserted on appeal must be prejudicial to warrant reversal, the prejudice of plain errors must

5

constitute manifest injustice or miscarriage of justice. *State v. Bennett*, 201 S.W.3d 86, 88 (Mo. App. W.D. 2006).

## Analysis

**Sufficiency of the Evidence**

Blair's first point on appeal is that the trial court erred in denying his motion for judgment of acquittal on all counts at the close of the evidence because there was insufficient evidence to submit the case to the jury on all counts. We agree, in part, and reverse his conviction for first-degree robbery, along with the corresponding count of armed criminal action. We affirm his conviction for second-degree felony murder, along with its attendant count of armed criminal action.

A person commits the offense of robbery in the first degree when he (or one of his accomplices if he is acting in concert) "forcibly steals property," and in the course thereof he, or another participant in the crime: (1) causes serious physical injury to a person; (2) is armed with a deadly weapon; (3) uses or threatens the immediate use of a dangerous instrument against any person; or (4) displays or threatens the use of what appears to be a deadly weapon or dangerous instrument. § 569.020.1. Blair asserts that there is no evidence that any property was stolen, forcibly or otherwise, from Victim at the time of his death. We agree.

At Blair's trial, McDaniel testified that he, Blair, and Holly intended to steal a car and rob a gas station on the evening of June 23, 2009. After unsuccessfully attempting to locate a screwdriver to assist them in breaking into and stealing a car, the men saw Victim park his car in front of the apartment building in which they had been seeking shelter. The three saw this as their opportunity to mug Victim and to steal his car. But the purported robbery went awry, and a struggle ensued between Victim and Blair, at which point Blair shot and killed Victim.

6

McDaniel testified that, prior to the shooting, the men had asked Victim for the contents of his pockets, and Victim claimed to have nothing. McDaniel testified that following the shooting, the men ran, and he did not see anyone take anything from Victim.

McDaniel further testified that he did not recall Holly having a cell phone prior to the confrontation with Victim; but after the confrontation, Holly had a cell phone that he used to call his girlfriend. This, the State argued, supported a reasonable inference that Victim's cell phone was forcibly taken from Victim during the confrontation and was the phone being used by Holly to call his girlfriend after the confrontation.

However, McDaniel himself had previously testified that Holly called his girlfriend *prior* to the confrontation with Victim. McDaniel also testified that he (McDaniel) called a friend after the confrontation with Victim to take him to the hospital. There is no evidence whose phone or phones were used to make these three phone calls. McDaniel's testimony that Holly used a phone both before and after the confrontation with Victim and his testimony that he was struck by the fact that Holly was using a phone after the confrontation because he did not have one before the confrontation can only be harmonized if one infers that Holly had to ask to use a phone other than one in his possession to make the call before the confrontation with Victim.

That inference notwithstanding, there is simply no evidence in the record supporting an inference that the phone Holly used to call his girlfriend *after* the confrontation came from Victim. No evidence was presented that Victim actually had a phone in his possession on the night of his murder for the men to steal. Likewise, no cell phone records were presented that the call from Holly to his girlfriend after the confrontation was made from Victim's phone. And while Victim's phone was found several weeks later in the possession of another person, there was no evidence about how that person obtained the phone, and there was no evidence

connecting the person to Blair, McDaniel, or Holly. As a matter of law, this evidence is insufficient to convict Blair of first-degree robbery as there simply was no evidence from which any reasonable juror could conclude beyond a reasonable doubt that the would-be robbers forcibly stole Victim's cell phone, an essential element of the crime. *State v. O'Brien*, 857 S.W.2d 212, 219-20 (Mo. banc 1993) (holding that in the absence of any evidence of deliberation, "jury [does not have a] license to speculate on what happened . . . [and is not] permitted to invent a version of facts—unsupported by any evidence—that fits the crimes charged"). This case is indistinguishable from our recent opinion in *State v. Doss*, 394 S.W.3d 486 (Mo. App. W.D. 2013).

In *Doss*, the defendant was convicted of having robbed and killed two men. *Id.* at 488. The State charged that Doss had stolen a cell phone or a wallet from one of the two victims. *Id.* at 492. While there was evidence that Doss's accomplice, after the robbery, possessed a cell phone that the accomplice claimed to have "found," there was no evidence connecting the phone to the victim. Doss did not see his accomplice take the phone, and Doss did not take a phone from the scene of the robbery. *Id.* In addition, this court found that there was not sufficient evidence that any wallets were stolen during the robbery. *Id.* Police testified that no wallets or cell phones were found in the apartment where the victims were killed, and in which one of them lived, and that it would be unusual for two men of the victims' ages not to possess wallets or cell phones. *Id.* at 492-93. We concluded:

> While we find the State's argument logical, that, alone, is not the standard by which we judge the sufficiency of the evidence. Even though it is logical to assume that the men owned wallets, there was no evidence indicating that they had wallets with them that day, or even that they customarily carried the wallets with them. Although one might suspect that [one of the victims] had one either on him or in the apartment, given that he lived there, [the other victim] was not a resident of the apartment, and he very well could have left a wallet, if he had one, in his car outside the apartment or elsewhere. Absent some evidence that wallets

8

were present and available to be stolen that day, there simply was not enough evidence to support Doss's conviction.

*Id.* at 493. *Doss* held that a suspicion that something was stolen, "even if that suspicion could be properly characterized as a strong one," was, by itself, insufficient. *Id.* at 494 (citing *State v. Goff*, 493 S.W.3d 657, 658 (Mo. App. 1973)).

As in *Doss*, there was no evidence that Victim in this case had a phone that was "present and available to be stolen" on the night of his murder. The sum total of the State's evidence on stolen property, at best, was that there was a "suspicion" that Victim's cell phone may have been stolen in the confrontation, which, frankly, is not a very reasonable "suspicion." And given the ease with which the State could simply have subpoenaed and introduced into evidence Victim's cell phone records, which would have presumably tied the men to the phone by itemizing the claimed post-confrontation phone call to Holly's girlfriend, we are at a loss to explain the State's failure to do so. Ultimately, though, *Doss* is indistinguishable from this case, and it dictates our conclusion that there is insufficient evidence to support Blair's conviction for first-degree robbery and the associated armed criminal action count, neither of which should have been submitted to the jury as requested by Blair in his motion for judgment of acquittal. Accordingly, Blair's convictions for first-degree robbery and the associated count of armed criminal action are reversed.[2]

This conclusion does not end our inquiry, however. Our Supreme Court has held that:

Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court *may* enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.

---

[2] Blair cannot be retried on these counts because "[t]he double jeopardy clause precludes remand for a second trial when a conviction is reversed because the evidence introduced at the first trial was legally insufficient." *State v. Miller*, 372 S.W.3d 455, 468 (Mo. banc 2012) (internal quotation omitted).

9

*O'Brien*, 857 S.W.2d at 220 (emphasis added) (citing *Cf. Morris v. Mathews*, 475 U.S. 237, 245-57, 106 S.Ct. 1032, 1037-44, 89 L. Ed. 2d 187 (1986); *United States v. Franklin*, 728 F.2d 994, 1001 (8th Cir. 1984)). Following *O'Brien*, Missouri appellate courts have frequently remediated ill-fated convictions on a greater offense by entering a conviction on a lesser-included offense and remanding, as necessary, for re-sentencing. *See, e.g., State v. Davies*, 330 S.W.3d 775 (Mo. App. W.D. 2010) (entering conviction of lesser-included offense of attempted enticement of a child where there was insufficient evidence to support conviction of enticement of a child); *State v. Payne*, 250 S.W.3d 815 (Mo. App. W.D. 2008) (remanding for entry of conviction and to resentence for lesser-included offense of assault in the third degree where there was insufficient evidence to support conviction of assault in the second degree); *State v. Boyd*, 91 S.W.3d 727 (Mo. App. S.D. 2002) (entering conviction of lesser-included offense of misdemeanor receiving stolen property where there was insufficient evidence to support conviction of felony receiving stolen property); *Woolford v. State*, 58 S.W.3d 87 (Mo. App. E.D. 2001) (entering conviction of lesser-included offense of misdemeanor stealing where there was insufficient evidence to support conviction of felony stealing). We may thus remediate a conviction overturned for want of sufficient evidence if: (i) there is an eligible lesser-included offense; and (ii) the evidence was sufficient to prove each element of that offense; and (iii) the trier of fact was required to find those same elements in order to convict for the greater offense. *O'Brien*, 857 S.W.2d at 220.

Plainly, attempted first-degree robbery is a lesser-included offense of first-degree robbery. *Davies*, 330 S.W.3d at 787 ("An attempt is a lesser included offense of the completed offense."). In addition, the evidence was sufficient (and Blair does not contend otherwise) to establish beyond a reasonable doubt each of the essential elements of first-degree robbery *except* the actual forcible stealing of property from Victim. As to this element, section 564.011 dictates

10

that "[a] person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A 'substantial step' is conduct which is strongly corroborative of the actor's purpose to complete the commission of the offense." The evidence in this case would have been sufficient to find that Blair or one of his accomplices engaged in conduct corroborative of the purpose to forcibly steal property from Victim. Thus, the first and second preconditions to our ability to enter a judgment of conviction on a lesser-included offense are satisfied.

The third precondition requires the jury to have found the essential elements of the lesser-included offense. Had *attempted* first-degree robbery been submitted to the jury, the jury would have been required to find the essential elements of first-degree robbery supported by the evidence in this case and that Blair took a "substantial step" toward forcibly stealing property from Victim. The verdict director for robbery submitted in this case, Instruction No. 8, did not expressly require the jury to find that Blair's (or one of his accomplices') conduct constituted a "substantial step" toward completion of the crime of forcibly stealing property. However, the instruction did require the jury to find that Blair (or one of his accomplices) "in doing so threatened the immediate use of physical force on or against [Victim] *for the purpose of overcoming resistance to the taking of [Victim's] property*." This is functionally indistinguishable from the definition of "substantial step" and required the jury to find that Blair or one of his accomplices engaged in conduct "that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense"[3] of forcibly stealing property from Victim.

It is immaterial to our discussion that Blair was not charged with attempted first-degree robbery. Although "due process requires that a defendant may not be convicted of an offense not

---

[3] § 564.011.1.

11

charged in the information or indictment," a trial court may nonetheless instruct on an uncharged offense if it is a lesser-included offense. *State v. Smith*, 592 S.W.2d 165, 165 (Mo. banc 1979). That is because "notice to a defendant that he is charged with a crime also puts him on notice for lesser included offenses as well." *Davies*, 330 S.W.3d at 791 (citing *Rupert v. State*, 250 S.W.3d 442, 446 (Mo. App. E.D. 2008) (holding a person can be convicted of a lesser-included offense of the crime actually charged because he is placed sufficiently on notice of the allegations against him).

Thus, while it was improper to convict Blair of first-degree robbery and associated armed criminal action, because the evidence was sufficient for the jury to find each of the elements of the lesser offense, and the jury was required to find those elements to enter "the ill-fated conviction on the greater offense," it is within our discretion to "enter a conviction for a lesser offense" (i.e., attempted first-degree robbery). *O'Brien*, 857 S.W.2d at 220. Here, the trial court and prosecutor did, in fact, engage in discussion of lesser-included-offense submission to the jury, and the prosecutor overtly indicated a conscious and strategic decision *not* to do so. The State's position on appeal has, likewise, not wavered. Under these circumstances, we see no reason to reward the State for its conscious and deliberate decision *not* to submit the lesser offense, and accordingly, we choose not to exercise our discretion to enter a conviction on the lesser offense.

Blair's convictions for first-degree robbery and associated armed criminal action are reversed,[4] and the sentences associated with those convictions are vacated.

Blair next argues that, since the State failed to prove first-degree robbery, the second-degree felony murder conviction must also be reversed. We disagree. The State is not

---

[4] "A conviction for ACA will not stand absent a conviction on the underlying felony." *Williams v. State*, 205 S.W.3d 300, 314 n.6 (Mo. App. W.D. 2006); *see also State v. Peters*, 855 S.W.2d 345, 347-48 (Mo. banc 1993) ("[I]f the defendant was not guilty of assault, he cannot be guilty of armed criminal action based on assault.").

required to successfully *convict* a defendant of an underlying felony as a prerequisite to a conviction for felony murder. To the contrary, an underlying felony to support felony murder need not even be charged. *See State v. Gheen*, 41 S.W.3d 598, 602 (Mo. App. W.D. 2001) ("Gheen was never charged with unlawful use of a weapon. That crime only served as the underlying felony for felony murder."). This is because section 565.021.1(2), the felony murder statute,[5] only requires as an element of the crime that an underlying felony be committed or *attempted* to have been committed. Section 565.021.1(2) states:

> A person commits the crime of murder in the second degree if he . . . [c]ommits *or attempts to commit* any felony, and, in the perpetration *or the attempted perpetration* of such felony or in the flight from the perpetration *or attempted perpetration* of such felony, another person is killed as a result of the perpetration *or attempted perpetration* of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

(Emphasis added.)[6] It is clear that a successfully completed underlying felony is not required for the commission of second-degree felony murder. It is sufficient if a death occurs as a result of an *attempt* to commit a felony. Accordingly, there need only be substantial evidence that Victim died "as a result of the perpetration *or attempted perpetration*" of a robbery by Blair.

As we have discussed, the evidence is sufficient for a reasonable jury to conclude beyond a reasonable doubt that Blair acted with the purpose to commit first-degree robbery; that he took a substantial step toward committing first-degree robbery; and that as a result of Blair's attempt to commit first-degree robbery, Victim was killed. Thus, there was substantial evidence to support submission of felony murder to the jury and Blair's subsequent conviction thereof by the jury.

---

[5] For the elements of the charged offense, we look to the statute establishing the offense. *State v. Hines*, 377 S.W.3d 648, 655 (Mo. App. S.D. 2012).

[6] Blair concedes in his appellate briefing that the State charged Blair with felony murder on the basis that Victim "was killed by being shot as a result of the *attempted* perpetration of the class A felony of robbery in the first degree."

We see no inequity in affording the State the benefit of attempted first-degree robbery as the predicate felony to support the felony murder conviction. Blair was charged with felony murder predicated both on attempted, and actually committed, first-degree robbery and thus was on notice that either crime, if supported by the evidence, would support the submission of felony murder to the jury. Even had Blair not been charged with felony murder based on attempted robbery, just as we could have done in connection with the ill-fated first-degree robbery conviction, we would be free to exercise our discretion to treat the felony murder charge as supported by the lesser-included charge of felony attempt. "[N]otice to the defendant that he is charged with a crime also puts him on notice for lesser-included offenses as well." *Davies*, 330 S.W.3d at 791 (citing *Rupert*, 250 S.W.3d at 446).

Blair's convictions for second-degree felony murder and the associated armed criminal action charge are affirmed.

Point I is granted in part and denied in part.

**Admission of Telephone Recordings**

Blair's second point on appeal argues that the trial court erred in admitting the recordings of his telephone conversations with various unknown individuals while he was incarcerated because the State failed to establish the authenticity of the recordings or, alternatively, failed to show that changes, additions, or deletions were not made to the recordings played at trial. This, however, was not the objection to the recordings made at trial. At trial, Blair's counsel made a general objection to the admission of these recordings based on "lack of foundation" but did not specify how the foundation for the recordings was insufficient. The Missouri Supreme Court has stated that such a general objection is insufficient to preserve the issue for appellate review, limiting challenges such as Blair's to plain error review. *McFadden*, 369 S.W.3d at 753 (holding

14

general objection to lack of foundation inadequate to preserve issue); *Bennett*, 201 S.W.3d at 88 (holding unpreserved issues limited to plain error review).

We decline plain error review in this instance because Blair fails to establish that there has been a manifest injustice or miscarriage of justice. *See Bennett*, 201 S.W.3d at 88. In lieu of the recordings, the remaining evidence overwhelmingly supported Blair's convictions for second-degree felony murder and armed criminal action.[7]

Point II is denied.

### Conclusion

Blair's convictions for robbery in the first degree and the armed criminal action conviction associated with the robbery conviction are reversed and the sentences vacated. In all other respects, the judgment and sentences of the trial court are affirmed.

_____
Mark D. Pfeiffer, Judge

Thomas H. Newton, Presiding Judge, and
Cynthia L. Martin, Judge, concur.

---

[7] Furthermore, the trial court conducted a hearing outside the presence of the jury to address Blair's general objection, and the State presented detailed testimony by a criminal investigator with the Department of Corrections sufficient to address and overcome the more specific objections now raised by Blair on appeal. Thus, *ex gratia*, we note that were these specific objections preserved for appellate review, Blair's objections would not satisfy the abuse of discretion standard necessary for reversible error as to the trial court's evidentiary ruling complained of.